SMITH *v.* NASHVILLE.

*(Nashville.* February 1, 1890.)

1. TAXATION. *Exemption of city water-works.*

Water-works owned and operated by a city, under authority conferred by its charter, for the purpose of sprinkling streets, extinguishing fires, and supplying water to those residing within the corporate limits, are exempt from all taxes imposed by general provisions of the revenue laws, and liable for taxes only when expressly included within the statute levying them. Such use of the corporate property is for public purposes.

Cases cited and approved: 44 Conn., 361; 80 N. Y., 302.

Cited and distinguished: 1 Duvall, 298; 48 Iowa, 324; 3 Hill, 531.

2. SAME. *Same. City may charge for water furnished residents.*

The fact that the city charged residents within its corporate limits for water furnished them, and thereby realized a considerable revenue, in excess of the expenses of operating the water-works, which surplus was applied to city purposes, does not defeat the implied exemption of the water-works from taxation.

3. SAME. *Same. Charter authority to maintain water-works.*

A city is authorized to furnish water to its inhabitants, either as a gratuity or for a recompense, without forfeiting the implied exemption of its water-works from taxation, where its charter contains this clause among the enumeration of the city's powers, to wit: "To provide *the city* with water-works."

4. SAME. *Same. Not liable for privilege tax imposed by Act of 1887.*

A city owning and operating water-works in the manner stated, and under authority of its charter, is not liable, though possessing the requisite population, for the privilege tax imposed by Act 1887, Ch.

1, upon water companies doing business within "cities, taxing districts, or towns" having the number of inhabitants therein designated.

Act construed: * Acts 1887, Ch. 1, pp. 20, 21.

5. SAME.   *Same.   Same.   Furnishing water to non-residents of city.*

A city does not render itself liable for said *privilege tax*, imposed by Act of 1887, Ch. 1, upon water companies doing business "in cities, taxing districts, or towns," by reason of the fact that it furnished water to persons outside its own corporate limits, for compensation, who are not shown to have been residents of any city, taxing district, or town falling within the provisions of said Act.†

Act construed: Acts 1887, Ch. 1, pp. 20, 21.

---

## FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County.   W. K. McAlister, J.

Attorney-general Pickle and J. R. Branch for Smith.

J. M. Anderson for Nashville.

Caldwell, J.   This record raises the question of the liability of the city of Nashville for a privilege tax on its water-works under the revenue Act of 1887.

---

\* The Act of 1889, Ch. 130, p. 264, adds to the provisions of the Act of 1887 imposing privilege tax on water companies, this clause: "This tax shall apply to all municipal corporations operating water-works and charging citizens for water."— Reporter.

† Quære by Reporter.—Does such diversion of its water-works from the uses contemplated by the city's charter, render the city liable for *ad valorem* tax thereon?

30—4 p

The case was before this Court on petition for *certiorari* and *supersedeas* at the December Term, 1887, and the opinion then delivered is reported in 2 Pickle, beginning at page 214.

The petition alleged the construction and maintenance of the water-works by the city in its corporate capacity, for the public good, and not as a private enterprise for pecuniary gain or profit, and this Court held that, in the absence of express statutory provision on the subject, the exemption from taxation arose by implication of law from the public ownership, nature, and use of the property, as revealed by the allegations of the petition. It was further decided, however, that the city could not in that mode question its liability for that part of the tax assessed in favor of the State, but that its remedy was to pay the same under protest and sue to recover the amount in thirty days, as provided by the Act of 1873. Hence, so far as the State was concerned, the petition was dismissed. As to the county, it was retained and remanded for further proceedings.

Subsequently the amount claimed for the State was paid under protest, and suit to recover the same was brought in due time. This new suit and what remained of the former one were then consolidated by mutual agreement, and heard together before the Hon. W. K. McAlister, Circuit Judge, without the intervention of a jury.

Judgment was for the city, and there is an appeal in error on behalf of the State and county.

Smith *v.* Nashville.

The correctness of the decision heretofore made by this Court on the allegations of the petition is conceded, but counsel for the State and county say that the proof on the trial refutes those allegations and shows that the water-works were used for pecuniary gain and profit, and not exclusively for the public good. ˙

P. J. Flannigan, Comptroller of the city, was the only witness introduced. We give the material part of his evidence in his own words, as found in the bill of˙ exceptions. He said "that said city always owned and operated the water company, * * * and it was maintained by levying a tax upon persons living in said city who used the water supplied; that the water was used for the purpose of extinguishing fires, sprinkling streets, and the use and benefit of citizens in said city; that there were several factories adjacent to said city, but beyond its corporate limits, and several thickly settled places in close proximity to said city, which from time to time were annexed to said city; that the factories laid their own pipe connecting with the city's water-mains, and, in cases of emergencies, when their private water supplies were exhausted, they used water furnished by the city, but this was only occasionally. The main reason why connections were made was to provide for an abundant supply of water in case of fire. That in all there were about $6,000 paid by factories and persons living adjacent to the corporate limits annually; that

this   *   *   *   was not the real source from which the revenue was derived; that about $85,000 annually were derived [from all sales of water], $50,000 of which went to pay the operating expenses, and the remainder to pay the interest on about $1,000,000 invested by said city in its water-works improvement, and that this remainder was not sufficient, and that there was a deficit annually, which was made up from other sources; *   *   *   that the fire companies responded to alarms when given, if adjacent to the city, and used water furnished by the city in extinguishing them, and had frequently responded to alarms sent in from factories beyond the corporate limits."

It is seen at once that the water-works are corporate property; that is not denied. The debate is with respect to the nature of the use. As to that, for the sake of convenience, we divide all the purposes for which the city furnishes water into three classes: (1) To extinguish fires and sprinkle the streets; (2) to supply citizens of the city; (3) to supply persons and factories adjacent to but beyond the corporate limits.

If the business were confined to the *first class*, there would be no ground to base a discussion upon, so clearly would the use be exclusively for public advantage.

We think there can be but little more doubt about the *second class*, especially in view of certain words in the city charter, to which we will advert presently.   Nothing should be of greater concern

to a municipal corporation than the preservation of the good health of the inhabitants; nothing can be more conducive to that end than a regular and sufficient supply of wholesome water, which common observation teaches all men can be furnished, in a populous city, only through the instrumentality of well-equipped water-works. Hence, for a city to meet such a demand is to perform a public act and confer a public blessing. It is not a strictly governmental or municipal function, which every municipality is under legal obligation to assume and perform, but it is very close akin to it, and should always be recognized as within the scope of its authority, unless excluded by some positive law. If the responsibility be voluntarily assumed or fixed by law, whether the one or the other, the performance of it is the doing of an. act for the public weal, a lending of corporate property to a public use.

The eighth subsection of Section 14 of the charter of the city of Nashville (Acts 1883, Ch. 114) enumerates some of the powers conferred upon the Mayor and City Council in these words: "To provide the city with water by water-works, within or beyond the boundaries of the city, and to provide for the prevention and extinguishment of fires, and organize and establish fire companies."

Here the first clause, "To provide *the city* with water by water-works," is very broad and comprehensive, and was obviously intended to authorize the corporation to furnish the inhabitants of

the city with water. Having accepted the charter and undertaken to exercise this authority in the manner detailed by the witness, it cannot be held that the city, in doing so, is engaging in a private enterprise or performing a municipal function for a private end. It is the use of corporate property for corporate purposes in the sense of the revenue law of 1887.

It can make no difference whether the water be furnished the inhabitants as a gratuity or for a recompense, the sum raised in the latter case being reasonable and applied for legitimate purposes. So raising a fund to help defray the expenses of operating the water-works and to keep down the interest on the city's indebtedness, incurred in the construction thereof, is no more engaging in business for gain and profit than would be the assessment and collection of taxes for that or any other legitimate object. To the extent that money is realized by sales of water (if it be so termed), the necessity of laying taxes in the usual way is diminished. If the water were furnished free of charge, then the expense of operating the works and meeting the interest on the debt would have to be met by an increased tax assessment.

We believe the views here expressed are sustained not only by sound reason and policy, but also by the weight of adjudged cases. In a Connecticut case it was decided that land owned by the city of Hartford and used for reservoirs for

collecting and storing water for the benefit of its inhabitants was not subject to taxation by the town of West Hartford, in which the land was situated; and, further, that the question of exemption was not affected by the fact that the water was sold to consumers and the water rents applied in payment of interest on the investment and incidental expenses. In the same case it was further held that another portion of the same tract, bought by the Water Commissioners at the same time, was not exempt, because not used for reservoirs or other public purposes. *Town of West Hartford* v. *The Board of Water Commissioners of the City of Hartford*, 44 Conn., 361.

By Act of the Legislature of New York a certain Board of Commissioners of Rochester were authorized to determine and execute the best and most expedient plan of supplying that city "with a sufficient quantity of pure and wholesome water for the use of its inhabitants and the extinguishment of fires." As a part of this plan, lands were purchased in the town of Rush and a reservoir was erected thereon. Water was supplied therefrom for the city's own use and for the consumption of the inhabitants, the latter paying prescribed water rates. The amount of rents received from consumers of the water was less than the interest on the bonds issued for the construction of the works. One question submitted to the Courts on those facts was: " Can the town of Rush legally impose a tax upon the said property of

the city of Rochester?" The Court of Appeals, speaking through Danforth, J., said that it could not, because the water-works, being "for the public good," were in legal contemplation "held for public purposes." *The City of Rochester* v. *The Town of Rush*, 80 N. Y., 302.

Other cases in harmony with these two might be cited, but that is not deemed necessary.

The cases relied on as in *direct* conflict we do not find to be so. The strongest adverse case is that of *City of Louisville* v. *Commonwealth*, 1 Duvall, 295. There the Court, in discussing the implied exemption of municipal property from taxation, used this language: "The more precise and distinctive test for classification is this: Whatever property, such as court-house, prison, and the like, which becomes necessary or useful to the administration of the municipal government, and is devoted to that use, is exempt from State taxation; but whatever is not so used, but is owned and used by Louisville in its social or commercial capacity as a private corporation, *and for its own profit*—such as vacant lots, market-houses, fire-engines, and the like—is subject to taxation." 1 Duvall, 298.

It will be observed that reservoirs or water-works are not enumerated here, and we are not informed, and cannot with certainty determine from the language used, on which side of the line the learned Judge would have placed such property if he had mentioned it in the classification of exempt

and non-exempt property. So it is not necessarily an authority in point.

The Iowa case does not touch the question at all. There the water-works were owned and operated by *a private company*, and *not by the city*. The company bound itself to furnish the city of Des Moines and its inhabitants with pure and wholesome filtered water at certain rates, and, after a limited period of time, to sell all of its property used in its business to the city, at its election. Because of this arrangement and contract with the city, the company denied its liability for taxes. Chief Justice Rothrock, in delivering the opinion of the Court, said: "The fact that the city is furnished water, for which it pays what is presumed to be a fair consideration, does not change the property from a private to a public use. The reservation of the city of the right to purchase the works does not invest it with any title or right to the property, or in any sense make it public property until it shall elect to purchase." *In the Matter of the appeal of the Des Moines Water Company*, 48 Iowa, 324.

If possible, the decision in the case of *Baily* v. *Mayor, etc., of the City of New York*, 3 Hill, 531, is still further from the question before us. That was an action against the city for damages for injuries resulting from the negligent and unskillful construction of a dam by the city's Water Commissioners. The Commissioners were held to be the agents of the city in such a sense that it

was liable for the injuries complained of. No question of taxation was raised in the case.

Mr. Cooley and Mr. Desty both lay down the rule that municipal property is by implication exempt from taxation when put to a public use, and that it is not exempt when not so used. They give instances of both classes and cite the cases. Each author gives some prominence to the Kentucky case reported in 1 Duvall; but Mr. Cooley, in his concluding sentence, says that the doctrine of that case would seem to limit implied exemptions *unreasonably*, unless restricted to the case of special assessments. Cooley on Taxation, 172, notes 3 and 4; 1 Desty on Taxation, 48, 49.

With respect to the third class there is an equally obvious, though altogether different, solution of the question. It is this: The tax in litigation was assessed against the city of Nashville for "exercising the privilege of running a water company" within her own limits, in a city "of 40,000 inhabitants or over," the amount of the tax, as to the State's part, being determined by the statute according to population. There is no assessment for the privilege of doing the business of a water company elsewhere than in the city; hence, if there be liability to the tax for furnishing water to any other persons than her own citizens—to individuals and factories adjacent to and beyond her corporate limits—that liability cannot be adjudged in this case, because not put in issue. Moreover, in addition to the lack of

Smith *v.* Nashville.

such issue, it does not appear in this record that the persons and factories receiving the water outside of the limits of Nashville were in *any city, town, or taxing district*, nor, if in any of these, the number of inhabitants therein. Yet such facts are indispensable to a correct determination of liability or non-liability for the tax, and for an ascertainment of the amount of the tax, if liability exists. The tax is to be assessed against *water companies* doing business "in cities, taxing districts, or towns," and the amount of the State's part of the tax varies from $50 to $600, according to population, ranging from 500 to 40,000, or over. Acts of 1887, Ch. 1, pp. 20 and 21.

Let the judgment be affirmed.