JOHNSON CITY v. BOOTH et al.—261 S. W. (2d) 820.

Eastern Section. May 6, 1953.

Petition for Certiorari denied by Supreme Court, October 9, 1953.

232

Tucker & Erwin, of Erwin, for appellants.

Price & Price, Green & Brandts and Winston & Guinn, all of Johnson City, for appellees.

McAMIS, J. This appeal by the County Chairman, County Trustee and the Tax Assessor of Unicoi County presents the question of whether properties of the City of Johnson City, a municipality with situs in Washington County, are exempt from taxation by Unicoi County wherein the properties are located. With the exception of a water line serving a few customers in the village of Unicoi, the Chancellor found that all of the property described in the bill was being used exclusively for a public purpose within the sense of the constitutional and statutory exemption. Accordingly, it was decreed that such property with that exception be stricken from the tax rolls of Unicoi County and that the collection of any tax on property declared by the decree to be exempt from taxation be perpetually enjoined. Defendants have assigned two errors: (1) That the Chancellor erred in

holding that the properties of complainant, City of Johnson City, located in Unicoi County were being used exclusively for municipal purposes and (2) that the Chancellor erred in holding that a former decree of the Chancery Court of Unicoi County in 1915 constitutes res adjudicata.

The bill was filed by the City of Johnson City on June 22, 1950, against the officials of Unicoi County above mentioned alleging that complainant owned in connection with the operation of its municipal water system many acres of land in Unicoi County whereon is located an infiltration plant and that it also owned within the county certain riparian rights. It was further alleged that, although exempt under Code Section 1085(1), such properties had been assessed for taxes by Unicoi County for the year 1950; that, as previously held in a decree of the Chancery Court of Unicoi County, such properties were being used exclusively for public purposes and, under the statute, are exempt from taxation by Unicoi County. The prayer of the bill was for a declaratory decree holding such properties exempt from taxation and holding the former decree res adjudicata.

The answer admitted that the property of the city located in Unicoi County had been assessed for taxation for the year 1950. It was denied, however, that such properties were exempt on the ground that they were being used exclusively for municipal purposes. Former adjudication was denied, and a declaration of the rights of the parties requested.

By Chapter 121 of the Private Acts of 1909 the City of Johnson City was empowered to acquire, own and operate a municipal water system for the purpose of furnishing water to its inhabitants and people residing in the territory adjacent to the city. Acting under this

authority, the city purchased what is known in the record as Blue Springs and certain other water rights in Unicoi County. A pipe line, 14 miles in length, was then constructed connecting Blue Springs with Johnson City. Water was pumped from the Springs into a chlorinating tank and without further purification the water was allowed to run through the lines and furnished to the inhabitants of the city. The city owned 370 acres surrounding Blue Springs and in 1915 Chancellor Hal H. Haynes rendered a decree in the Chancery Court of Unicoi County holding that attempts of the County of Unicoi to levy a tax upon this property on the ground that it was being used for other than municipal purposes were unwarranted since only about four acres of the 370 acre tract was in cultivation and the balance constituted a watershed for the Springs. There was no appeal from that decree.

Several years later, in order to meet the growing demands of its inhabitants for water, the city purchased the Davis Springs with a small acreage surrounding the Springs, merging the new supply with that already being taken from Blue Springs and treating the whole in the same manner as formerly. Still later, and in 1929, the city acquired for the same purpose 1,200 additional acres in what is known as the Red Fork area of Unicoi County. Following this purchase another suit was filed by the city to enjoin a threatened assessment of its properties for taxation by Unicoi County. This case was heard by Chancellor S. E. Miller who filed a memorandum opinion holding that the properties were being used exclusively for municipal purposes and were not subject to taxation. A recent search failed to locate a decree based upon Chancellor Miller's memo. Later, another tract of 100 acres was purchased as a site for a filtration plant and,

in 1946, the plant was constructed at a point near the center of this tract, the plant itself covering only about 1 acre. Since 1946, the filtration plant has been used for the purification of water taken from North Indian Creek, the city having previously purchased all the lower riparian rights on this stream. All of the above tracts are located in what is known as Limestone Cove of Unicoi County but neither tract adjoins any other tract owned by the city.

At the time of the assessment in 1950, the city owned in Unicoi County about 1,900 acres of land in the four separate tracts above mentioned together with the lower riparian rights on North Indian Creek. The 1,200 acres comprising the Red Fork area is mountainous and contains streams of water flowing into North Indian Creek from which, as stated, the city takes water into its filtration plant. As we understand the record, it is not necessary to run the water flowing from Blue Springs and from Davis Springs into the filtration plant but only to put it through a process of chlorination. However, the overflow from these springs, if any, passes into North Indian Creek above the filtration plant. From these sources the city takes into its line 5.3 million gallons of water per day. Of this amount, 3.3 million gallons come from the two Springs mentioned and 2 million gallons are taken from the Creek through the filtration plants and thence into the line.

The record shows that the main line, 14 miles in length, runs through the unincorporated Town of Unicoi, located in Unicoi County, thence through open country, cutting across a corner of Carter County, and then into Washington County before reaching the corporate limits of Johnson City. Another line extends from Johnson City through Washington and Carter counties a distance of

about 4 miles, along a heavily populated section of highway, to the village of Milligan College. Most of this line is outside the present corporate limits of Johnson City and from it water is sold to people living along the line. In June, 1951, the city had a total of 7,810 customers. Sixteen Hundred and Eight, or 20.59 percent, lived outside the corporate limits of the city. The entire water system, including land, filtration plant and lines, is valued at approximately $1,000,000 and approximately one-half of this value is represented by holdings in Unicoi County. For the year ending June 30, 1951, after paying its current bonded water debt, interest and operating costs, the water department of the city had an operating surplus for the year of $145,000 leaving out of consideration depreciation on its facilities.

Except an annual rental of $35 for a cabin which the city permitted to be occupied for a few years and then discontinued renting, it has received no revenue from its land holdings in Unicoi County. During one year the city received for dead timber removed to reduce the fire hazard some several hundred dollars. It permitted one of its tenants who was employed as a caretaker to grow four-tenths of an acre of tobacco and another was allowed to graze a few cattle on some of the open land. The city received nothing for these uses.

Section 28 of article 2 of the State Constitution provides:

"All property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes".

Code Section 1085(1) provides that there shall be exempt from taxation:

"All property of the United States, all property of the State of Tennessee, or any county, or of any incorporated city, town, or taxing district in the state that is used exclusively for public, county or municipal purposes."

As early as Smith v. City of Nashville, 88 Tenn. 464, 12 S. W. 924, 7 L. R. A. 469, it was held that property held by a municipality for the purpose of supplying water to its inhabitants is being used exclusively for a public purpose within the sense of the Constitution and of the statute.

In City of Knoxville v. Park City, 130 Tenn. 626, 630, 172 S. W. 286, 287, L. R. A. 1915D, 1103, it was said:

"The true test to be applied is whether the municipality sought to be subjected to taxation is engaged in the administration of the property in question for a public purpose; that is, for governmental purposes. It is the character of the use to which the property is put, and not so much the person who owns or administers it, or the place where the property may be situate, that is determinative of this question of exemption from taxation."

The opinion in that case, prepared by Mr. Justice Williams, contains an exhaustive and learned review of a wide range of cases dealing with this question. The facts were that the City of Knoxville acquired by purchase a water system located in the City of Park City, the west boundary of Park City being within 300 feet of the east boundary of the City of Knoxville for a distance of about 1 mile. In purchasing the private water company supplying both municipalities, the City of Knoxville assumed the contract then in existence between the company and Park City and continued to operate within the limits of both cities. In this situation, the City of Park City

undertook to levy a privilege tax for the operation of a water works within its limits, also an ad valorem tax for the year 1910. The bill was filed to enjoin the collection of these taxes. The court recognized the holding of many cases, including Smith v. City of Nashville, supra, that the fact that water is furnished to inhabitants of unincorporated suburbs is a mere incident to, and not destructive of the public purpose and use entitling the municipality to invoke the right of exemption.

In distinguishing these holdings from the question posed, however, it was said:

"It is difficult to conceive how the city of Knoxville has any public or corporate purpose to serve within the corporate limits of Park City. All municipal purposes therein are those of Park City, created by legislative act to exercise them. The furnishing of a water supply for itself and its inhabitants is its municipal purpose and cannot be Knoxville's.

"Nor may it logically be conceived that the city of Knoxville serves even incidentally its own corporate public purpose by means of the Park City system. What is the primary 'public purpose' of Park City may not be an incidental 'public purpose' of Knoxville. The Legislature will be taken to have intentionally lodged the full power and duty in that regard in its local governmental representative, Park City."

The general question was re-examined a short time later in Johnson City v. Weeks, 133 Tenn. 277, 180 S. W. 327, 3 A. L. R. 1431, in which the situation was more nearly analogous to that presented in the instant case. Mr. Justice Williams wrote the opinion in that case also and reviewed the holdings in Smith v. City of Nashville,

supra, and City of Knoxville v. Park City, supra, as well as a large number of decisions from other jurisdictions. In the Weeks case it appears Johnson City had extended its water line beyond its corporate limits for the purpose of furnishing water to the inmates of National Soldiers Home located in Washington County. Washington County undertook to levy an assessment for county purposes on the water lines of the city outside its corporate limits and, as in this case, the city invoked the constitutional exemption, as well as that allowed by statute, insisting that the property levied upon was exclusively devoted to a public or corporate purpose and not subject to taxation.

The opinion reiterates the holding of Smith v. City of Nashville, supra, that a water line does not lose its character of being public property exclusively used in furtherance of a public purpose merely because it extends beyond the corporate limits of the municipality, sustaining it on the reasoning that the existence of sickness and epidemics is a matter of concern to nearby urban populations. Distinguishing City of Knoxville v. Park City on the ground that in that case the municipality sought to be taxed was furnishing water to the inhabitants of a separate municipality, it was held that the Chancellor erred in holding the line running to the National Soldiers Home subject to taxation.

██ ██ Except as to the lines serving the Town of Unicoi which the Chancellor held subject to taxation, we cannot escape the conclusion that these cases require an affirmance of the Chancellor's holding as to the filtration plant and water lines. We think the rule of incidental use which they clearly recognize applies. The sale of water to inhabitants of the Town of Unicoi constitutes only a minor fraction of the sum total of sales to inhabitants

of the city and its suburbs. If the city made no sales to the inhabitants of the Town of Unicoi, its need for a source of supply and facilities for purification and distribution would not be materially lessened. The mere fact that some revenue is incidentally derived from public property primarily and principally devoted to a public use does not in and of itself alter the character of the holding as one for a public purpose within the sense and meaning of the exemption. Annotations, 3 A.L.R. 1445; 101 A. L. R. 790; 129 A. L. R. 485; 155 A. L. R. 425; City of Cleveland v. Board of Tax Appeals, 153 Ohio St. 97, 91 N. E. (2d) 480, 16 A.L.R. (2d) 1354.

The question remains: Are the city's holdings in the watershed within the protection of the exemption? The city insists and the proof shows that, in order to prevent erosion and afford a more uniform flow of water from the springs and creek throughout the year by preventing a rapid run-off during heavy rains, it is desirable to keep the watershed in timber and that for purposes of sanitation it should be kept as free of human habitation as possible. To do this it is desirable, if not necessary, to own a good part of the land comprising the watershed though pollution may be overcome or mitigated by filtration. Hence, it is argued, its entire properties in Unicoi County are being used exclusively for municipal purposes.

We think there is merit in this argument. The exemption would be of little value if a municipality could be forced to choose either to keep its watershed too small to ensure an adequate supply of pure water or lose its right to an exemption for all of its property not immediately and directly used in the operation of its system.

While we are fully conscious of the possible serious effects of the loss of revenue to Unicoi County, we are

unable to escape the conclusion that relief can come only from legislation circumscribing the exemption. Except as to the pipe line in the Town of Unicoi held by the Chancellor to be taxable, we find that all of the city's holdings are being used exclusively for municipal purposes within the sense of the exemption.

In this view of the case, it becomes unnecessary to decide whether the county is concluded by the decree and memorandum opinion in earlier litigation.

Affirmed and remanded. Costs to be taxed to appellants.

Hale and Howard, JJ., concur.