CITY OF CHATTANOOGA, TENNESSEE, Appellee,

*v.*

MARION COUNTY, TENNESSEE, et al., Appellants.

(*Nashville,* December Term, 1957.)

Opinion filed July 11, 1958.

PAUL D. KELLY, JR., Jasper, for appellants.

WILKERSON & ABSHIRE, Chattanooga, for appellee.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a suit for a declaratory judgment filed by the City of Chattanooga against Marion County and its County officials, J. Vance Barker, County Judge, Ed Holder, Tax Assessor, and Frank Minter, Trustee of said County. The cause was heard on bill and answer and upon stipulation of counsel filed in the cause.

The question for decision is whether Marion County may legally assess, levy and collect a general *ad valorem* tax upon the electric power property located within the borders of said County and owned by the City of Chattanooga and operated through the Electric Power Board of Chattanooga.

The Chancellor held that said property was not so taxable, hence the appeal by Marion County, et al.

It is stipulated among other things that the City of Chattanooga by and through the Electric Power Board of Chattanooga is engaged in the sale and distribution of electric current and renders electric service generally, as authorized by amendments to its charter set out in Ch. 455, Private Acts of 1935 of our General Assembly.

The area of operations of said Power Board is prescribed by Ch. 538, Private Acts of 1939, as an amendment to sec. 3 of the original act. In accordance therewith, the Power Board is principally engaged in the sale and distribution of electric current in the City of Chattanooga, Hamilton County, Tennessee, and also sells and distributes electric current in counties adjoining Hamilton County in Tennessee, including Marion County and in Walker and Catoosa Counties, Georgia.

The Power Board owns property in Marion County used in rendering service to residents of said County. Its operations in Marion County are confined to unincorporated, suburban or rural areas of a part of said County which largely lies south of the Tennessee River and adjoins Hamilton County. The two most heavily populated communities in the area in said County are Guild, which is about 18 miles from Chattanooga, and Whiteside, which is about 15 miles from Chattanooga.

Other portions of Marion County are served by the Sequatchie Valley Electric Cooperative. The headquarters of the Sequatchie Valley Electric Cooperative are in Marion County and the area involved herein could be served by this Cooperative.

Provision is made in Ch. 53, Private Acts of 1945, as an amendment to sec. 14 of the original act for the payment of tax equivalents and the same have been made by complainant and accepted by Marion County beginning with the year 1944, the effective date of said act, and for each year thereafter up to and including the year 1956. Special reference will be made to this provision for tax equivalents hereinafter.

It is further stipulated that the number of customers in Marion County, to-wit, 475, is .6 of 1% of the total number of customers of the Power Board of the City of Chattanooga. The value of its property in Marion County is .39 of 1% of its total property value. The revenues in Marion County from its customers is .26 of 1% of the total revenues of the Power Board. The annual net operating loss for the operation in Marion County is $657. The number of miles of distribution lines in Marion County is 2% of the whole. The types of property in said County are poles, wires, transformers and meters, which are located on Federal, State and County highways and individual meter boxes on customers' property. There are no employes regularly assigned to duties in Marion County and no office of any kind maintained there but there are two facilities for paying bills, to-wit, a grocery store in Guild and one in Whiteside. The Power Board charges the same rate to its customers wherever located and the average monthly

power bill of complainant's customers in Marion County is $7.51, which is $1 per month less than the customers of the cooperatives, which amounts to the total savings for its Marion County customers of $5,700 per year.

The constitutional and statutory provisions involved are Art. II, sec. 28 of our Constitution, which provides:

"All property real, personal, or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, * * *."

T.C.A. sec. 67-502 provides:

"The property herein enumerated shall be exempt from taxation:

"(1) All property of the United States, all property of the state of Tennessee, of any county, or of any incorporated city, town, or taxing district in the state that is used exclusively for public county or municipal purposes. * * *"

■ The principal assignment of error by the appellant is that the Chancellor should have held that the City of Chattanooga is selling its electric current to the general public and especially to the citizens in Marion County was acting in its proprietary or private capacity and was, therefore, subject to be taxed just as any private corporation or individual. This by way of analogy to the rule applied in negligence cases. For the purpos, of resolving negligence cases it is settled law in this jurisdiction that a municipality operates its own water, electric light or gas plant in a private and not a governmental capacity and is liable for negligence in connection

therewith. *Nashville Elec. Serv. v. Luna,* 185 Tenn. 175, 181, 204 S.W.2d 529.

■ On the other hand, it is equally well settled in this jurisdiction with reference to taxation that a municipality which engages in rendering utility services is performing a public municipal function and that property devoted to these uses is exempt from taxation. *Smith v. City of Nashville,* 1890, 88 Tenn. 464, 12 S.W. 924, 7 L.R.A. 469, involving a water system; *Keenan & Wade v. City of Trenton,* 1914, 130 Tenn. 71, 168 S.W. 1053, involving an electric light system.

■ So far as we are advised, however, there is no Tennessee case involving the question of *ad valorem* taxes on a municipal electric power system engaged in supplying both the inhabitants of the City and County and adjacent Counties. The controlling principles, however, we think are contained in some cases involving water systems.

In *Johnson City v. Weeks,* 1915, 133 Tenn. 277, 180 S.W. 327, 328, 3 A.L.R. 1431, Washington County sought to assess and collect taxes for County purposes upon a water pipeline owned by Johnson City, a municipal corporation, which had extended its waterline beyond the borders of the City for the purpose of supplying water to inmates of the National Home for Disabled Volunteer Soldiers located in Washington County.

There this Court said:

"The question to be solved, therefore, is: If a municipality lay a water line from its corporate limits to such an institution, or construct a lighting line, for the purpose of supplying water or light (as the case

may be) from its plant for such an institution, located in territory adjacent to the corporate boundary, is such line subject to taxation (or to be treated as unexempt) in behalf of the county in which such fragment of line lies?

"We had thought that the argument of this court in the case of *City of Knoxville v. Park City,* 130 Tenn. 626, 172 S.W. 286, L.R.A.1915D, 1103, fairly demonstrated a negative answer; but the counsel of the county of Washington relies upon that case as one announcing a doctrine to the contrary."

Then quoting from the Park City case:

"The Court of Appeals of Kentucky, in the later case of *Com. v. City of Covington,* 128 Ky. 36, 107 S.W. 231, 14 L.R.A.,N.S., 1214 held that the fact that water was furnished for compensation to inhabitants of its suburbs, without its or any corporate limits, does not alter the public purpose or use of its water system so as to make it subject to taxation. But the court took care to distinguish the case it had in hand from the one we have under investigation, saying:

" 'We do not mean that a city may enter upon the business of maintaining a waterworks system for other cities or towns, but only that the fact that it incidentally furnishes water to a considerable number of persons in proximity to the city, without injury to the rights of the city, does not alter the public character or use of the property, or make it subject to taxation.'

"The ruling in *Com. v. City of Covington, supra,* is in harmony with the decision of many courts to the effect that the fact that water is furnished to inhabi-

tants of unincorporated suburbs is a mere incident to and not destructive of the public use."

Further in the Weeks case at page 284 of 133 Tenn., at page 329 of 180 S.W., it was said:

"The rule is based on consideration of convenience, but convenience that approaches near to necessity. Fringing the boundaries of a city or town, there is nearly always a population that is dependent for advantages of water and light on the initiative and enterprise of the city or town of which it comes so near to being an integral part. Left alone, such a population has not the cohesiveness or the civic strength required to procure such a service for itself. That it should have a supply of water in order, for example, to the prevention of sickness and epidemics, is a matter of concern to the nearby urban population as well as to itself. It is not a far reach that such a service by the city should be covered by a power thus incidentally public in character when that public purpose is not delegated to another municipality."

Thus it is seen that these two cases are distinguishable from one another in that in the Park City case, the City of Knoxville was maintaining a water system within and for the City of Park City.

The defendant relied before the Chancellor upon the Park City case and upon the case of *Johnson City v. Booth,* 37 Tenn.App. 231, 261 S.W.2d 820. The Chancellor referred to both of these cases in his opinion and gave especially careful consideration to the later case. There, Johnson City owned substantial property for its watershed and water supply in Unicoi County which, of

course, was a County other than that in which Johnson City is located. Johnson City ran water pipes from its property in Unicoi County into Johnson City in Washington County and some of these pipes passed through the unincorporated community of Unicoi and lines were branched off there to serve the inhabitants of that community. Unicoi County attempted to levy an *ad valorem* tax on these properties but the Court of Appeals held that all of this property was being held for a public use and was exempt from taxation except the pipeline in the town of Unicoi which the Chancellor had held to be taxable. The Chancellor in the instant case upon investigation of the record in that case, found that there had been no appeal by Johnson City from the ruling as to the pipeline in the town of Unicoi. He, therefore, held and correctly so, that he was not bound on that point by the opinion of the Chancellor because it had not been brought up for review nor considered by the Court of Appeals.

With the foregoing principles established, we come down really to the specific question which has to be answered and that is whether there is a close enough analogy between the factual situation in the instant case and in the above cited cases to justify the conclusion that the operations of the Chattanooga Power Board in Marion County are so incidental to, and so consistent with, its principal function as not to destroy or alter the public purpose of its electric system and thus, so far as Marion County is concerned, destroy its immunity from taxation.

It seems to us that a mere inspection of the figures given in the stipulation, *supra,* showing the amount of complainant's operations in Marion County compared with its total operations in a sufficient answer in the

affirmative to the above question. It is practically a mere drop in the bucket.

According to the stipulation, this area in Marion County could be served by the Sequatchie Valley Electric Co-operative but the latter is neither a municipality nor any other governmental body nor utility having an obligation to serve this area; it is a general welfare corporation. T.C.A. sec. 65-2531. Nor is Marion County obligated to furnish electric service to these or any other inhabitants of the County. Therefore, the complainant's operations in Marion County are consistent with its general public purpose.

It would serve no useful purpose to undertake to discuss all of the cases cited in the brief of appellants, in view of what we have referred to above.

■ The only other question we deem it necessary to mention is the insistence that the provision for payments in lieu of taxes gives Marion County a "positive direction" to levy an *ad valorem* tax because it states "payment of funds in lieu of taxes shall be made to the City, Counties and taxing districts as long as such governmental bodies to which such payments are made do not levy a property tax or any other tax on the board's electric property and distribution system."

We are unable to follow this insistence for the reason that it would simply be a vain thing for the City of Chattanooga to request and for the legislature to grant by the Private Act of 1945, Ch. 53, this amendment to sec. 14, by which these tax equivalent payments are provided for; it would have been a waste of everybody's time to set up this method of determining tax equivalents,

if it had been intended as a direction to each county and each taxing district, etc., to levy an *ad valorem* tax.

Said act provides that the Power Board of Chattanooga shall pay to each of the named areas an amount of money annually, which shall be deemed a tax equivalent to the taxes each of sail governmental bodies *shall lose* by reason of the acquisition by the City of Chattanooga of the private electric distribution system. It then in the next two paragraphs sets up the formula for figuring these tax equivalents and comes out with this result, that the relative payments shall be as follows:

City of Chattanooga 81.95%; Hamilton County (inside) 81.95%; Hamilton County (outside) 17.93%; Rhea County .09%; Bradley County .02%; Marion County .01%; for the local taxing districts of Hamilton County of Lookout Mountain .42%; Signal Mountain .42%; East Ridge .42%; Ridgeside .10%; and to Graysville in Rhea County .07%.

We must, therefore, conclude that what is meant by the language of the first quoted paragraph ''as long as such governmental bodies * * * do not levy a property tax or any other tax * * *'' is a tax that is *legally* levied.

We are, therefore, constrained to affirm the decree of the Chancellor.

NEIL, CHIEF JUSTICE, not participating.