The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee, Appellant,

v.

SCHATTEN CYPRESS COMPANY, Appellee.

Supreme Court of Tennessee.

Oct. 14, 1975.

Rehearing Denied Dec. 8, 1975.

James H. Harris, III, Metropolitan Atty., Nashville, for appellant.

Elkin Garfinkle, Dick L. Lansden, Nashville, for appellee.

OPINION

HARBISON, Justice.

This action was instituted by the taxpayer, Schatten Cypress Company, challenging the validity of the 1972 assessment of land and buildings on which it holds a long-term lease. Appellee contended that the Tax Assessor for the Metropolitan Government of Nashville and Davidson County had failed to assess separately the leasehold interest of appellee from the reversionary interest, which is owned by the Metropolitan Government itself, the appellant here.

The complaint alleges that separate interests in real property are required to be separately assessed pursuant to T.C.A. § 67-606(5) and that the Tax Assessor had failed to comply with this statute. It is further alleged that the appellee is paying rent "equal to the full value of the use of

the property" and that the leasehold "has no separate or taxable value."

The complaint states that the improvements placed on the property under the terms of the lease were to be built and maintained by appellee but that ultimately they became the property of the lessor, so that the appellee only had the use of the property during the term of the lease.

The primary lease itself, dated December 22, 1960, is exhibited to the complaint. This instrument was executed by the City of Nashville, predecessor in interest to the Metropolitan Government, as lessor and by appellee as lessee.

The lease covers property then lying outside the corporate limits of the City of Nashville. The property was situated in Davidson County, a separate taxing district, with separate taxing authority at that time. The lease covers some 5.97 acres of land fronting on the Murfreesboro Road near the present Metropolitan Airport. The land was owned by the City of Nashville under its airport authority, and the City, apparently not foreseeing the immediate use of the property for airport purposes, entered into a long term lease with appellee, giving it a primary term of twenty-five years at a reserved rent of $12,000 per annum, with two renewal options of ten years each at a reserved rental of $18,000 per annum.

Under the terms of the lease the appellee was to construct on the premises a one-story building containing a minimum of 60,000 square feet of floor space, and appellee was required to pave all of the adjoining area in accordance with plans and specifications which were to be approved by officials of the lessor. It was agreed that the building, when constructed, should be maintained by the lessee, but upon termination of the lease it would be the property of the lessor. The lessee was given the right to conduct any lawful business on the premises, and was expressly given the right to sublease all or any portion of the building.

On March 28, 1963 an amendment to the lease was executed by the parties, and this amendment is also exhibited to the complaint. By this amendment the appellee, as lessee, was authorized to construct an additional building consisting of approximately 20,000 square feet of floor space, immediately adjacent to the west side of the original building. No additional rental was required of the lessee, and all of the other terms and provisions of the original lease were ratified and confirmed.

The Metropolitan Government filed a motion to dismiss the present action, which was overruled. It then filed an answer to the complaint, denying that there had been any improper assessment of the leasehold interest of appellee. Both parties then filed motions for summary judgment.

Attached to the motion for summary judgment filed on behalf of appellant was an affidavit of the Chairman of the Metropolitan Board of Equalization. His affidavit stated that appellee had not challenged its 1972 assessment before the Metropolitan Board of Equalization.

Also attached to the motion for summary judgment filed by the Metropolitan Government was an affidavit of its Tax Assessor, Clifford R. Allen. Both courts below noted the existence of this affidavit, but neither mentioned its contents. In this affidavit the Assessor stated that he had, in the performance of his duties, "assessed the leasehold interest of the plaintiff, Schatten Cypress Company, in the property located on Murfreesboro Pike and identified as Field Book Number 2DA 51440, Map and Parcel Number 120–0, for the year 1972 as of 10 January 1972. Attached hereto as Exhibit A to my affidavit is a true copy of the 1972 tax statement indicating my assessment of Schatten Cypress' interest in the property in question."

The affidavit sets out the amount of the assessment and states that this assessment "represents only the value of plaintiff's leasehold interest, separate and apart from the value of any other interests, in said property."

The affidavit states that no assessment was made of the lessor's interest in the property because the lessor, being the Metropolitan Government, was a tax-exempt municipal corporation.

The affidavit repeats that the total assessment

"represents the true and accurate evaluation of the plaintiff's entire leasehold interest, separate and apart from any other interests, in said property as of 10 January 1972. The assessment was based on sound, professional appraisal practices by appraisers employed in the Office of the Tax Assessor and was made pursuant to and strictly in accordance with the applicable statutes of Tennessee and the provisions of the Charter of The Metropolitan Government of Nashville and Davidson, [sic] Tennessee."

Attached to this affidavit was a tax statement issued to appellee for the year 1972. Under the heading of "Property Description" thereon is the legend "Assessment of Leasehold Interest."

There is no countervailing evidence in the record. The affidavit of the Tax Assessor stands uncontradicted and unimpeached.

By an amendment to its complaint, filed after the foregoing materials were entered in the record by appellant, appellee averred that on July 10, 1963 it had entered into a sublease of a portion of its property to Malone & Hyde, Inc., and it was averred that the leasehold interest of appellee in the property had not been assessed separately from the subleasehold interest of Maone & Hyde. Appellee quoted from an opinion of the Court of Appeals in former tax proceedings between these parties, wherein the Court of Appeals had noted that there was no separate valuation of the interest of this sublessee. It was alleged in the amended answer that the parties to the present action were the same as the parties to the previous litigation and that the issues in the present case were the same as those involved in the former proceedings. Neither the pleadings, decrees nor opinions filed in the former proceedings were filed in the present case.

We have examined the opinion of the Court of Appeals in the previous litigation referred to. The Court of Appeals in that case held void a second amendment to the original lease, executed in October, 1963, and did note the fact that there had been a single assessment of the leasehold interest of appellee, without any indication as to how that assessment was to be prorated between each of two sublessees. From our examination of the former proceedings, however, they are in no sense res adjudicata to the issues presented in the present case. The issues are entirely distinct, and a different tax period was involved.

Attached to the amended answer of appellee was a sublease made by appellee to Malone & Hyde, Inc. on July 10, 1963. At other points in the record appellee refers to a sublease of the original 60,000 square foot building which it made to Zayre, Inc., but the Zayre sublease was never exhibited in the record, and we have no way of knowing what its terms and provisions may have been.

In the Malone & Hyde sublease, appellee agreed to build a building of some 22,000 square feet of ground area, and appellee was to be paid a reserved annual rental from this sublease of $25,300. In this instrument the sublessee further agreed to pay to Schatten Cypress "any increase in the tax on the leasehold premises herein demised, over the first year such taxes are assessed and paid whether such increase be by reason of assessment or an increase in rates."

There was also filed in the record by stipulation a letter from the Principal Appraiser of Metropolitan Government, showing the assessment made of appellee's leasehold interest, as determined in proceedings before the State Board of Equalization, for the year 1970. The figures for that year were the same as for the year in issue in the present case. In his letter the Assessor said:

"As you know, the State Board set the assessment at $267,500. A leasehold assessment on the land of $59,700 and a total of $207,800 leasehold assessment on the building make up the total of $267,500. In estimating our valuation for the total leasehold value of the property of Schatten-Cypress' interest in the property, we estimated that Cooper & Martin * constituted 39 per cent of the total leasehold value and that the Zayre property constituted 61 per cent of the leasehold value."

It was stipulated between the parties that the Assessor would testify in the present case "in accord with said letter of November 6, 1970" if he were called as a witness.

As previously stated, appellee, as well as appellant, moved for summary judgment, and in support of appellee's motion there was filed an affidavit of one of the attorneys of appellee, who stated that he had examined the records in the Tax Assessor's Office. His affidavit is as follows:

"The assessment value *on the leasehold interest* of Schatten Cypress Company on the property involved in this cause appears in Field Book No. 2DA, Page 89. The item with regard to Schatten Cypress Company *leasehold property* is listed on said book and page as 2DA 51440 120 and on the columns setting out assessments, the land is listed at 59,700. The buildings and improvements at 207,800 and the total 267,500. The last year shown on said book is '70, being the last valuation appearing in said book and under the system being continued as the valuation until changed by the Assessor." [emphasis added]

In this case the chancellor held the 1972 assessment void, upon the ground that there had been no separate assessment of the leasehold interest as distinguished from the fee or reversion. He discussed in his opinion the issue of whether the reversionary interest, owned by Metropolitan Government, was or was not tax exempt, but finally concluded that this was an immaterial issue and that in all events the record failed to disclose a separate assessment of the leasehold interest as required by law. Although recognizing that any complaint which the appellee might have as to valuation would necessarily have to be made to the Metropolitan Board of Equalization, the chancellor concluded that the assessment for the year 1972 was void as a matter of law, and he sustained the motion of appellee for summary judgment.

In an opinion filed on March 27, 1975 the Court of Appeals affirmed. The Court of Appeals accepted the insistence of appellee that the values shown on the Assessor's records were values either of the fee simple interest of the Metropolitan Government, or that they represented the total values of the land and buildings, and did not contain a separation of the values of the leasehold from the fee.

Our examination of this record leads us to a different conclusion from that reached by both of the courts below. There is simply no evidence whatever in this record that the Assessor did anything other than that which he stated in his affidavit. Throughout the entire record, including the Field Book, the assessment refers to the leasehold interest of the appellee in the land and the buildings, and at no point is there anything to indicate, insofar as our examination of the record reveals, that the Assessor had included in the assessment to appellee any fee or reversionary valuation.

As stated previously, we do not have before us the Zayre sublease. We accordingly have no way of knowing what annual rental it produces. We do have, however, the Malone & Hyde sublease of 22,000 square feet of building area, which throws off to appellee an annual rental of $25,300.00. If

* We assume from the record that Cooper & Martin was a successor in interest to Malone & Hyde.

we accept the apportionment suggested by the Principal Assessor, that this sublease represents 39% of the total leasehold value, and if we might project rent accordingly, it would seem that the Zayre sublease would yield an annual rental of at least $39,000.00. If we could project rentals on the basis of area alone, the Malone & Hyde sublease throws off more than one dollar per square foot. On this basis the Zayre sublease would yield in excess of $60,000.00 per annum. It must be borne in mind that the lessee has the exclusive right to use some six acres of exceedingly valuable commercial property fronting on the Murfreesboro Road in Davidson County, and all improvements thereon, for a period of twenty-five years, with options to renew for an additional twenty years, for an annual rental of only $12,000.00 to $18,000.00. If the subleases throw off anything like the amounts above suggested, in the neighborhood of $60,000.00 to $85,000.00 or more per annum, it is obvious that the leasehold interest in the present case has an enormous value.

■ While the foregoing rental projections are merely suppositions upon our part, we do know from the record that the Malone & Hyde sublease alone, covering about one-fourth of the total building area, yields over twice the base rental paid by appellee for the whole parcel during the primary term of its lease with appellant. The valuation of a leasehold for tax purposes and for condemnation purposes is normally accomplished by determining whether there is an excess in fair rental value over the rent reserved in the lease.[1]

The actual reserved rent paid by the appellee to the Metropolitan Government is only $1000.00 per month for approximately six acres, including the improvements, during the primary term and $1500.00 per month during any renewal period. The reserved rents which it is receiving from its sublessees exceed by many times the rent

which appellee itself is paying. There is no evidence in the record as to the cost or the nature of the buildings which appellee was required to build. Of course, at the end of either 25, 35 or 45 years from the date of the lease, the land and the buildings will become available for use by the lessor. Whether there will be any residual value in the buildings at the end of the lease is a matter which we cannot determine upon this record. In the interim, however, neither the lessor nor any purchaser of the property can have any use thereof or anything of value from the property except the annual reserved rent.

■ We therefore, are unable to agree with the holdings of either court below that the assessments in question fail to reflect a valuation of the leasehold. As was entirely appropriate, the Assessor separated his valuation of the leasehold in the land from that of the buildings. There are about two acres of the parcel under roof, and nearly four acres not under roof. If the appellee were dissatisfied with the valuation placed on the leasehold, either land or buildings, by the Assessor, it had a clear administrative remedy which it has failed to pursue.

The argument by appellee that the Assessor failed to make a separate assessment against the reversionary interest is, in our opinion, without merit. The property is owned by the Metropolitan Government, which is the taxing authority. At the time the lease in question was entered into, there were two taxing authorities in Davidson County, one of these being the City of Nashville and the other the County of Davidson. It was conceivable that Davidson County might place this property on its tax rolls, at the time of the original lease, because some question might have been made as to whether the City of Nashville was using the property for a "public" or "municipal" purpose within the meaning of

1. *State v. Grosvenor,* 149 Tenn. 158, 258 S.W. 140 (1923); *Moulton v. George,* 208 Tenn. 586, 348 S.W.2d 129 (1961); *Mason v. City of Nashville,* 155 Tenn. 256, 291 S.W.

1074 (1927); *State Dept. of Highways and Public Works v. Texaco, Inc.,* 49 Tenn.App. 278, 354 S.W.2d 792 (1961).

T.C.A. § 67–502(1), in the making of such a lease as is here involved.

There are a number of cases in this state holding that one public body may tax the property of another public agency if that property is not being used for public purposes.[2] So long as Davidson County was a separate taxing entity from the City of Nashville, there was a possibility that the interests of both the lessee and of the lessor City of Nashville might be subject to county taxes.

In 1963, however, the Metropolitan Government of Nashville and Davidson County, Tennessee came into being, as successor to both the former city and county governments. It is a consolidated government, and, although for some purposes there are established separate taxing districts, such as the Urban Services District and the General Services District, it is a single government and a single taxing authority.

 No case has been cited under which a public body is required to assess and pay taxes to itself. None of the cases referred to in the briefs suggest such a requirement. Whether the lease of the present property by the Metropolitan Government to appellee is or is not for a "public purpose" within the meaning of the tax exemption statutes, we think that it would be an entirely unnecessary exercise for the Metropolitan Government to make a separate assessment of its own interest in its own property and pay taxes to itself.

 Appellee alleged in its original complaint that it was paying no more than the fair rental value of the property under its lease. We think that it has wholly failed to demonstrate this proposition, but even if it were correct, any such complaint should have been made initially to the Board of Equalization, and not to the courts.

 Appellee further contends that there is no separate valuation or assessment of the subleases which it has made to Zayre and to Malone & Hyde. We are simply unable to ascertain from this record, however, that either of these sublessees is paying to appellee anything less than the full and fair rental value of the property under their respective subleases. Appellee has offered no affidavits or any other information to suggest that either of the subleases has a separate assessable value, over and above the amount of the rent reserved by appellee. The Zayre sublease is not even filed. The Tax Assessor has indicated how he apportioned these respective subleases for the purpose of enabling appellee to pass on any increase in taxes to its sublessees, and this meets the objection voiced by the Court of Appeals in the prior tax litigation between the parties. Certainly the burden of proof rested upon appellee to show any separate taxable value to the subleases, if it expected to void its own assessment upon the basis of the failure of the Assessor to assess the sublessees.

We are of the opinion that the motion for summary judgment filed in this case on behalf of the Metropolitan Government was well taken and should have been sustained. The judgments of both courts below are reversed, and the suit is dismissed at the cost of appellee.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.

2. *Shelby County v. McCanless*, 163 S.W.2d 63 (Tenn.1942); *Knoxville v. Park City*, 130 Tenn. 626, 172 S.W. 286 (1914); *Johnson City v. Booth*, 37 Tenn.App. 231, 261 S.W.2d 820 (1953). See also *Chattanooga v. Marion County*, 204 Tenn. 56, 315 S.W.2d 407 (1958); *State v. Hamilton County*, 176 Tenn. 519, 144 S.W.2d 749 (1940).