GEORGE STINSON, ED D. LEWIS, and )
GELSCO OF TENNESSEE, INC., )
                                                     ) **Davidson Circuit**
       **Plaintiffs/Appellees,** ) **No. 94C-4001**
                                                     )
**VS.** )
                                                     ) **Appeal No.**
**138 FIFTH AVENUE SOUTH, INC.,** ) **01A01-9702-CV-00060**
**138 FIFTH AVENUE SOUTH** )
**ASSOCIATES, L.P., ALBERT DEL** )
**FAVERO, JR., and METROPOLITAN** )
**DEVELOPMENT and HOUSING** )
**AUTHORITY,** )
                                                     )
       **Defendants/Appellants.** )

**FILED**

**January 14, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE HAMILTON V. GAYDEN, JUDGE

STEVE NORTH, #3921
1215 Gallatin Pike, South
Madison, TN 37115
ATTORNEY FOR PLAINTIFFS/APPELLEES

Clark H. Tidwell, #2280
LASSITER, TIDWELL & HILDEBRAND
213 Fifth Avenue, North
Nashville, TN 37219
ATTORNEY FOR DEFENDANTS,
138 Fifth Avenue South, Inc.
138 Fifth Avenue South Associates, L.P.,
Albert Del Favero, Jr.

GEORGE B. BARRETT, #2672
217 Second Avenue North
Nashville, TN 37201
For: Defendant/Appellant, MDHA

MODIFIED AND REMANDED.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR IN SEPARATE OPINION:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

**GEORGE STINSON, ED D. LEWIS, and** )
**GELSCO OF TENNESSEE, INC.,** )
                        )     **Davidson Circuit**
        **Plaintiffs/Appellees,**     )     **No. 94C-4001**
                        )
**VS.**                       )
                        )     **Appeal No.**
**138 FIFTH AVENUE SOUTH, INC.,**    )     **01A01-9702-CV-00060**
**138 FIFTH AVENUE SOUTH**       )
**ASSOCIATES, L.P., ALBERT DEL**    )
**FAVERO, JR., and METROPOLITAN**   )
**DEVELOPMENT and HOUSING**      )
**AUTHORITY,**                  )
                        )
        **Defendants/Appellants.**     )

# O P I N I O N

The captioned defendants, Metropolitan Development and Housing Authority (hereafter MDHA, or "the Authority"), has obtained the permission of the Trial Court and this Court for this interlocutory appeal from rulings of the Trial Court relating to the rights and liabilities of the parties.

The Authority is an agency of the Metropolitan Government of Nashville and Davidson County, Tennessee, with power of eminent domain. The Authority was authorized to exercise its powers to acquire title to land in the vicinity of the Nashville Arena, including a tract known as 138 Fifth Avenue South owned by the defendant, 138 Fifth Avenue South, L.P. a limited partnership of which the defendant, 138 Fifth Avenue South, Inc., was the general partner. At all material times, the defendant Albert Del Favero, Jr., was the duly authorized agent of the owners.

On December 1, 1992, Albert Del Favero, Jr., acting for the owners, leased the subject property to the plaintiffs, George D. Stinson and Edward D. Lewis, for a period of two years with options for two successive renewals of five years each. Lessees were obligated to carry out

extensive repairs to the improvements on the property. The lease contained the following provision:

> 17) If a portion or all of said premises shall be taken by any public authority under the power of eminent domain, then the term of this lease shall cease on the part so taken from the day the possession of that part shall be acquired for any public purpose and the rent shall be paid up to that day, and the rent thereafter shall be adjusted in proportion of the rental value of the premises taken vs. the unimproved land (the parking areas). If the parties are unable to agree on the reduction, each shall appoint one arbitrator, who together shall appoint a third arbitrator, and the decision of any two of the said arbitrators shall be final. All damages awarded for such taking shall belong to and be the property of the Lessor, whether such damages shall be awarded as compensation for diminution in value to the leasehold or to the fee of the property herein leased; provided, however, that the lessor shall not be entitled to any portion of the award made to the lessees for loss of business, moving expenses, or for any trade fixtures located thereon. (Emphasis supplied)

On December 28, 1992, the plaintiffs, Stinson and Lewis, assigned their interest in the lease to the plaintiff Gelsco, Inc.. The lessees and their assignee are hereafter designated collectively as the plaintiffs. Said sublease contained the following provision:

> 33. If a portion or all of said premises shall be taken by any public authority under the power of eminent domain, then the term of this Lease shall cease on the part so taken from the day the possession of that part shall be acquired for any public purpose and the rent shall be paid up to that day, and the rent thereafter shall be adjusted in proportion of the rental value of the premises taken versus the rental of the remaining premises.

On May 9, 1994, Albert Del Favero, acting for the owners/lessors, executed a deed to the Authority conveying the subject property with the usual covenants and warranties.

On May 9, 1994, plaintiffs filed the present suit against all of the captioned defendants stating the following claims:

18. Damages for breach of the lease.

19. Interpretation of Paragraph 17 of the December 1, 1992 lease.

21.     Reformation of the same lease.

22.     Damages for unjust enrichment.

23.     Compensation under T.C.A. § 2529-16-123 the Inverse Compensation Law.

24.     Compensation under the theory of constructive trust.

In response to a motion to enjoin the lessors from disposing of their assets, the lessors filed the affidavit of Bob Howard, agent of the Authority, which read in part as follows:

> MDHA has the power of eminent domain and if the landowner had refused to sell, the property would have been condemned. This was a total as opposed to a partial taking. The $1,250,000 represents payment for the fee simple interest in the property. The identity of the landowner is determined by a title search.
>
> - - - -
>
> The $1,250,000 which MDHA paid to Fifth Avenue Associates was for the land and improvements. It did not include compensation for loss of business, moving expenses, or personal property used in the operation of the business of the tenant. MDHA does not pay for loss of business. MDHA will pay the tenant in possession for moving personal property used in the operation of the tenant's business.

One of the defendants, Albert Del Favero, Jr., filed an affidavit containing the following excerpts:

> We entered into the Lease and Agreement with George W. Stinson and Ed D. Lewis in December of 1992. We required the tenants to spend a total of $150,000 in improvements and repairs and because of this we agreed to lower fixed monthly rental payments as opposed to a percentage lease. At the same time we agreed to correct existing environmental problems at the expense of the lessor. We are not able to recover this expenditure except to the extent our cleanup efforts affected the city's offer to acquire the property.
>
> - - - -
>
> After the city contacted us about taking our property, our attorney and I met with the lessees and their attorney in an effort to reach a compromise after they threatened to prevent us from being paid for our property by the city. It is my understanding that if the city filed a condemnation petition against us, the city would deposit what it thought the property was worth with the clerk, and the lessees' attorney assured us that he could keep our money tied up a long time in court.
>
> - - - -
>
> In fact, we had several face to face meetings with one or more of the lessees and their attorneys. We were being

asked to disregard Paragraph 17 of the Lease and Agreement and divide the condemnation award with the lessees so that they could get their money back. We were accused of being greedy because Paragraph 17 favored the lessors over the lessees. We had no idea what the city was going to pay us and we left the negotiating table.

- - - -

The city offered and we accepted $1,250,000 for our land and improvements based upon two MAI appraisals. We notified our attorney and he so informed lessees' counsel. Thereafter this lawsuit was filed.

- - - -

We have not received payment from the city for loss of business profits, moving expenses, or compensation for trade fixtures, but only for our fee simple title.

One of the plaintiffs filed an affidavit containing the following excerpts:

2.      Throughout all of the negotiations for the lease of this property, eminent domain was never mentioned, nor was there ever any suggestion on the part of Lessors or their agents of the possibility that the property would be taken by eminent domain.   In the negotiation of the terms and conditions of the lease eminent domain was never discussed or mentioned.  The lease was drafted by agents of the Lessors and neither before, during or after the execution of the lease was any mention made of the provisions regarding eminent domain.

3.      After the execution of the Lease, my partner and I have complied in full and in a timely manner with every condition and term of the lease.  The lease required that we spend One Hundred Fifty Thousand Dollars ($150,000.00) in improvements on the building within the first ten months of the lease.  In fact, we spent Seven Hundred Fifty Thousand Dollars ($750,000.00) in improvements.

7.      After it was learned that the City intended to acquire the property for the Nashville Arena Project, the appraisers for the City asked to inspect the property.  On February 15, 1994, my attorney and I met with Albert Del Favero, Jr. and his attorney, Clark Tidwell along with the appraisers from the City at the subject property.

- - - -

The appraisers asked for construction plans and a list of all of the improvements that had been made and indicated that the City intended to employ a general contractor to give them an estimate on replacement costs.  Prior to divulging any of that information, a private meeting involving myself and my attorney and Mr. Del Favero and his attorney was held. At that meeting it was pointed out that the cooperation of the Lessees could greatly enhance the appraisals of the property but that there was no reason for the Lessees to cooperate if the landlord was going to take the position that the Lessees were not entitled to share in the award.

- - - -

Although no final agreement was reached as to the actual apportionment, Lessees proceeded to furnish to the appraisers and the City a complete set of construction plans, photographs of the property and a complete list of the improvements that were made.

      8.     In addition, copies of the lease and sub-lease as well as details of a sub-lease on the parking lot were furnished to the appraisers and the City.

On June 13, 1994, the Authority notified plaintiffs to vacate the premises within 90 days.

Plaintiffs amended to sue the Authority in inverse condemnation.

On November 30, 1994, the case was transferred from the Chancery Court to the Circuit Court which had jurisdiction of inverse condemnation cases.

On October 7, 1996, the parties filed the following Stipulation:

     As evidenced by signature of counsel for Plaintiffs and counsel for MDHA it is stipulated as follows:

      1.     Attached hereto are the following documents:

      (1)     a claim for moving expenses in the amount of $767,033.00 by Plaintiffs and an approval by MDHA of $57,137.37.

      (2)     An agreement between Plaintiffs and MDHA which is self-explanatory.

      2.     It is stipulated that MDHA has paid a total of $57,137.37 to Plaintiffs without prejudice to Plaintiffs' claim that it is entitled to more than that amount for moving expenses and without prejudice to any of the other claims made in this lawsuit.

     (Signature)
     Steve North #3921
     Attorney for Plaintiffs
     1215 Gallatin Pike, South
     Madison, TN 37115
     (615) 860-7644

     (Signature)
     George E. Barrett

Attorney for MDHA
217 Second Avenue, North
Nashville, TN 37201


On November 18, 1996, the Circuit Judge filed the following memorandum:

This case is before the Court upon motions to dismiss filed by both defendants, 138 Fifth Avenue South, Inc. et.al. (hereinafter Fifth Avenue), and Metropolitan Development Housing Authority (hereinafter MDA). The Court will treat both motions as Rule 56 motions for summary judgment as there are matters considered by the Court beyond the pleadings.

FACTS

Plaintiffs, Stinson and Lewis, entered into a 12-year lease with defendant Fifth Avenue on December 1, 1992, for the lease of the property subject to this lawsuit. Stinson and Lewis subsequently assigned the lease to a corporate sublessee, Gelsco; however, Stinson and Lewis are the principals in the corporate sublessee and plaintiffs are thus collectively referred to as plaintiffs. The lessor was also an assignee of the defendant Del Favero and will be identified as one entity, Fifth Avenue.

The lease and the subsequent sublease contained the same language relative to the value and disposition of the leasehold interest in the event of condemnation. Identical language in each document provided that the portion of the funds representing the value of the leasehold interest would go to the lessors/fee owners in the event of condemnation.

On April 21, 1994, the MDHA purchased the subject property in its entirety by warranty deed from the lessor/fee owner, Fifth Avenue. No condemnation suit filed. The purchase price for the property, $1.25 million, was based on the value of the fee and the improvements. See affidavit of Robert Howard, MDHA.

None of the $1.25 million paid to the lessors/fee owners for the fee and improvements represented the value of the leasehold interest of the lessees, Stinson and Lewis. Thus nothing was paid by MDHA to the lessor/fee owners that purported to represent an evaluation of the value of the leasehold interest. See affidavit of Robert Howard, MDHA.

Later, the plaintiffs accepted the approximate sum of $55,000 for moving expenses, reserving the right to additional compensation for moving expenses, if any.

The plaintiffs filed an inverse condemnation against MDA claiming a right to compensation for their leasehold interest, reformation of the lease (and sublease), equitable

-7-

estoppel, loss of profits, value of nonremovable trade fixtures and additional incidental expenses for moving.

This lawsuit was filed in Chancery Court and transferred to the Circuit Court by Chancellor Robert Brandt. Chancellor Brandt ruled that paragraph 17 of the lease and sublease that apparently gives to the lessors/fee owners the entire funds representing the value of the leasehold interest in the event of condemnation is ambiguous.

RULING

The Court grants the motion of the Fifth Avenue for summary judgment and denies the motion of MDHA in part, but grants the motion for summary judgment by MDHA in other particulars.

DEFENDANT MDHA

The court denies the motion of MDHA for a summary judgment as to plaintiffs' right to be justly compensated for a property right, specifically the value of the plaintiffs' leasehold interest and fair moving expenses, if any. Otherwise, the physical taking would amount to a taking without the exercise of an original eminent domain proceeding, and the concomitant denial for plaintiffs' constitutional right not to have their property taken without just compensation. State v. Gee, 565 S.W.2d 498 (Tenn. App. 1977); Shelby County v. Barden, 527.

The court grants the motion for a summary judgment in all of the other legal and factual issues: Reformation, estoppel (except as stated in narrow exception herein), the loss of business profits, unjust enrichment and the value of nonmovable trade fixtures.

Implicit in this ruling is the Court's conclusion that the sale of the property by the lessor to MDHA was not an exercise of an eminent domain and therefore paragraph 17 of the lease (and sublease) is not relevant. And the lease is silent as to the division of the proceeds in the event of a sale as opposed to an eminent domain proceeding. See State v. Gee. In addition, even if the sale of the property by the landowners to MDHA was a proper exercise of eminent domain, the sale evaluation did not include the value of the leasehold interest, which is different from the value of the improvements. See Metropolitan Government of Nashville and Davidson County, Tenn. v. Schatten-Cypress Co., 530 S.W.2d 277 (1975).

The Court, however, grants the motion of MDHA as to the issue of loss of business profits, value of fixtures and the value of improvements, if any, except to the extent loss of business profits, value of fixtures and/or the value of improvements are to be considered in a recognized evaluation method of the value of the leasehold interest that

was destroyed. Accord: <u>Lamar Advertising of Tenn. v. City of Knoxville</u>, 1995 Tenn. App. Lexis (Ct. App. 1995); <u>Lamar Advertising of Tenn. v. Metropolitan MDHA</u>, 803 S.W.2nd 686 (1993); <u>Metropolitan Government of Nashville and Davidson County, Tenn. v. Schatten-Cypress Co.</u>, supra.

Also, the Court overrules the motion to dismiss the amended complaint on the grounds of lack of standing of the plaintiffs and nonpayment of state taxes.

DEFENDANT FIFTH AVENUE

The Court grants the motion as to Fifth Avenue in totality.

None of the funds received by the defendant Fifth Avenue represented an evaluation for the leasehold interest. The affidavit of Ben Howard, MDA, in reference to the interest purchased by MDA from Fifth Avenue, et.al., reads as follows, "The $1.25 million which MDA paid to Fifth Avenue Associates was for land and improvements..." Thus, MDA did not purchase the leasehold interest from the lessor, or lessee; nor was the leasehold interest evaluated for the purpose of determining the purchase price. Therefore, the ambiguity, if any, surrounding Paragraph 17 of the lease is not relevant for two reasons: (1) There was no condemnation; (2) There was no evaluation of the leasehold interest in arriving at the final purchase price for the land and improvements.

The judgment of the Trial Court concludes as follows:

1. That the Motion to Dismiss or for Summary Judgment of Fifth Avenue is granted and that the case be and hereby is dismissed as to Defendants Fifth Avenue.

2. That the Motion of MDHA to dismiss the Amended Complaint on the grounds of lack of standing of the Plaintiffs and non-payment of state taxes is overruled.

3. The Motion of MDHA for Summary Judgment or to dismiss the cause of action for taking the property and property rights of Plaintiffs and for the fair market value of the Plaintiffs' leasehold interest and reasonable moving expenses is denied.

4. The Motions of MDHA with regard to loss of business profits, value of fixtures and the value of improvements is granted except to the extent that loss of business profits, value of fixtures and improvements are to be considered in a recognized evaluation method of the value of the leasehold interest that was taken.

The Trial Court overruled the motion of the Authority to alter or amend, but ruled:

> The Court is of the opinion that a determination of the following issues by interlocutory appeal prior to trial would prevent needless, expensive and duplicative litigation; and the Court finds pursuant to Rule 9 of the Rules of Appellate Procedure that the following issues should be resolved by interlocutory appeal before this case proceeds further, and they are: (1) whether the sale under threat of eminent domain constitutes a "taking under the power of eminent domain"; (2) whether the "condemnation clause" in the lease between Fifth Avenue and Plaintiffs is enforceable and, when property interpreted, amounts to a termination of the Plaintiffs' leasehold interest by an evaluation of the improvements to the fee as distinguished from an evaluation of the leasehold interest; and (3) whether Fifth Avenue should remain a party in order to indemnify MDHA on the basis of the agreement between MDHA and Fifth Avenue, since Fifth Avenue may suffer irreparable harm by being bound by the results of a trial without having had the opportunity to participate.
>
> For all of these reasons, the Court overrules MDHA's Motion to Alter or Amend, but grants to MDHA an interlocutory appeal.

This Court approved the interlocutory appeal on the questions stated in the last quoted order of the Trial Court.

The Authority has presented to this Court the following issues for review:

> I.       Is there a genuine issue of material fact relating to the construction, validity, enforceability, applicability, or conscionability of the so-called "condemnation clause" involved in the lease in this case?
>
> II.      Did MDHA take from the plaintiffs an interest in real estate without due process or just compensation?
>
> III.     Did the Trial Court err in dismissing the lessors and limiting the issue at trial to the value of the leasehold interest and moving expenses?

The Authority first relies upon an interlocutory ruling in Chancery Court prior to the transfer of the case to Circuit Court. Under the procedure above narrated, the ruling of the Chancery Court was superseded by the subsequent ruling of the Circuit Court, and it is the last ruling of the Circuit Court which is before this Court for review.

Paragraph 17, of the lease, quoted above, provided:

> If a portion or all of said premises shall be taken by any public authority under the power of eminent domain - - the term of the lease shall expire - - -. All damages for said taking shall belong to and be the property of the lessor, - - - however, - - - the lessor shall not be entitled to any portion of the award made to the lessee for loss of business, moving expenses, or for any trade fixtures located thereon.

Interpretation of a written argument is not a matter of fact, but a matter of law for decision by the Court, as to which appellate review is *de novo* without a presumption of correctness, and the instrument must be interpreted and enforced as written according to its plain terms. *Rainey v. Stansel*, Tenn. App. 1992, 836 S.W.2d 117; *Park Place Center Enterprises, Inc., v. Park Place Mall Associates*, Tenn. 1992, 836 S.W.2d 113; *Estate of Haynes v. Braden*, Tenn. 1992, 835 S.W.2d 19.

This Court has determined as a matter of law that the quoted words of the contract "shall be taken by any public authority under the power of eminent domain" means "taken by any public authority by the exercise of the power of eminent domain in the manner provided by law" and said words do not mean by the threat of the exercise of such power.

The power of eminent domain and the power of condemnation are synonymous. *State v. Harr*, 24 Tenn. App. 298, 143 S.W.2d 893 (1940).

T.C.A. Title 29, Chapter 17, Part 4, provides for the exercise of the power of eminent domain by housing authorities. § 29-17-401 provides for procedure of taking, beginning with the filing with the clerk of the appropriate court, a petition and a formal "declaration of taking" including:

1.  An adequate description of the property to be taken.

2.  The estate or interest in said property being taken, and

3.  A statement of the estimated amount of just compensation for the taking.

Nothing is found in the present record to indicate that any part of the above required procedure has taken place.

Section 29-17-403 provides that, upon deposit of the estimated just compensation with the court, title shall vest in the Authority which shall be entitled to an order of possession. Section 29-17-404 provides that the owner may withdraw the deposit of estimated just compensation from the clerk of the court and litigate the amount of just amount of compensation in excess of the amount deposited. Nothing is found in the record to indicate that this procedure occurred.

On the contrary, the record shows without dispute that, by threat of condemnation the Authority induced the defendant, Del Favero to execute a deed to the Authority conveying the land with the usual covenants and warranties of title and right to convey. This was not the exercise of the power of eminent domain in the manner provided by law. This record indicates that actual possession was obtained by the Authority from the lessees by the issuance of a writ of detainer from the Court of General Sessions, and not in the Circuit Court which has jurisdiction of eminent domain proceedings.

The Authority cites *Scott v. McReynolds*, 36 Tenn. App. 289, 255 S.W.2d 401 (1952) which was a dissolution of a partnership and not a lease/eminent domain case. It is clearly distinguishable upon the facts and applicable law.

The Authority cites *Dobbs v. Guenther*, Tenn. App. 270, 846 S.W.2d 270, which was a complaint for fraud and declaration of rights, and is distinguishable on the facts and law.

The Authority argues that plaintiff's alternate claim of inverse condemnation is an admission that a condemnation took place. Alternative pleading may not be used as an admission. *Worley v. Weigals*, Inc., Tenn. 1996, 919 S.W.2d 589.

T.C.A. § 29-16-123 reads as follows:

> Action initiated by owner - (a) If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.

The evidence in this record shows that plaintiffs were dispossessed by the Authority's general sessions possessory action, thereby satisfying the requirement of *Haase v. City of Memphis*, 149 Tenn. 235, 239 S.W. 545 (1923).

Under the facts of this case, the rights of the dispossessed owner of an interest in the land are alternative. *Johnson v. Roane County*, 212 Tenn. 433, 370 S.W.2d 496 (1963); *East Tenn. and WNCRR v. Gouge*, 30 Tenn. App. 40, 203 S.W.2d 170 (1947).

The foregoing supports the right of the plaintiffs to recover under the theory of inverse condemnation. Nevertheless, defendants/lessors insist that lessors execution of the deed to the Authority under threat of condemnation must be considered a "taking." The Authority argues that, if the lessors argument is correct, then the amount paid to the lessors for the deed must be divided between the lessors and the lessee in accordance with *State ex rel Commissioner of Transportation v. Teasley*, Tenn. App. 1995, 913 S.W.2d 175. The cited authority involved a billboard lease, and the decision was controlled by 42 USC § 4652, the Uniform Relocation Act of 1972, T.C.A. § 13-11-101, and by the determination by the Trial Court of the credibility of witnesses.

In *State ex rel Department of Transportation v. Gee*, Tenn. App. 1977, 565 S.W.2d 498, the lease provided that, if less than 25 feet was condemned, the rent would not be reduced, but lessors and lessees would share in the award; and that, if more than 25 feet were taken the rent would be reduced by agreement. It appears that there was no provision for sharing the award if

the taking was more than 25 feet. Only six feet were taken, so there was no reduction of rent but there was a sharing of the award. This Court held:

> In the absence of any express provision by the parties, Tennessee law requires an apportionment of the award according to the value of the respective interests of lessor and lessee in the property taken. See *Shelby County v. Barden*, 527 S.W.2d 124 (Tenn. 1975); *Mason v. City of Nashville*, 155 Tenn. 256, 291 S.W. 1074 (1927).
>
> - - - -
>
> In Tennessee, condemned land is to be valued as one estate and a fair market value fixed for the taken property as a whole before apportionment of that amount is made among the various interests in the property. *Moulton v. George*, 208 Tenn. 586, 348 S.W.2d 129 (1961); *State v. Texaco, Inc.*, 49 Tenn. App. 278, 354 S.W.2d 792 (1961). Apportionment between lessor and lessee is accomplished by determining the value of the latter's interest in the taken property, which in turn is calculated by determining the fair rental value of that property for the unexpired term of the lease and subtracting the rent that would actually have been paid for it by the lessee during that term.
>
> - - - -
>
> In other words, the total fair market value of the taken property is apportioned by first determining the lessee's interest, which is the fair market value of the leasehold on that property minus rent actually called for under the lease, with the remainder of the property's fair market value going to the lessor. Incidental damages to each interest are also allowed, but are not an issue in the instant case.
>
> - - - -
>
> On remand, the trial court should retry only the issue of exactly how the award is to be apportioned between the Gees and Madison, both of whom are entitled to share in it according to their interests.

Regardless of whether a "taking" occurred, plaintiffs are entitled to fair compensation for their losses as a result of the events narrated above.

Nevertheless, the Authority argues that no consideration should be given to the sums spent by the lessees in the improvement of the property, because said improvements became "fixtures", i.e., a part of the land. Under the facts of the present case, this Court cannot agree. Even though the improvements were affixed to the realty, they were installed for use during a long term lease, and the value of the lease to the lessees was thereby enhanced. Thus, under *State v. Gee, supra*, the lessees interest in the property will be ascertained by fixing the value of

-14-

the occupancy of the improved premises for the term of the lease and deducting therefrom the agreed rental.

The Authority insists that, if it is to be burdened with payment to the lessees of the value of their leasehold, it (the Authority) is entitled to claim indemnity or contribution from the lessors pursuant to the warranty and covenants of the deed. This Court agrees with this insistence. TRCP Rule 19.01, *Citizens R. Est. & Loan Co., Inc. v. Mtn. States Div. Corp.*, Tenn. App. 1981, 633 S.W.2d 763.

The final clause of Paragraph 17 of the lease is:

> [T]he lessor shall <u>not</u> be entitled to any portion of the award made to the lessees for <u>loss of business, moving expenses or for any trade fixture located thereon</u>.

Only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are to be put, are presumed to be permanently annexed, or removal of which would cause serious harm to the freehold. *Harry J. Welchel Co. v. King*, Tenn. 1980, 610 S.W.2d 710.

The uncontroverted evidence in this record shows that both parties, lessors and lessees made substantial improvements to the freehold as agreed in the lease. It is clear from the lease that, in event of taking by eminent domain, the lessees would not be deprived of the value of occupancy for the remainder of the lease minus the rental due under the lease for the remainder of its term. This interpretation of the intent of the parties preserves the right of the lessors to realize upon the enhancement of the value of the property resulting from the improvements performed by them and the residual value of the improvements made by lessees at the end of the term of the lease.

The lessees have filed the following issues for review:

I.      Is there a genuine issue of material fact relating to the construction, validity, enforceability, applicability, or conscionability of the so-called "condemnation clause" involved in the lease in this case?

II.     Did MDHA take from the plaintiffs an interest in real estate without due process or just compensation?

III.    Did the Trial Court err in dismissing the lessors and limiting the issue at trial to the value of the leasehold interest and moving expenses?

The issues just stated have been discussed and decided, or are rendered moot by the preceding portions of this opinion.

The judgment of the Trial Court is modified to find that plaintiffs are entitled to recover from the Authority the fair value of their leasehold interest to be determined in a further evidentiary hearing in accordance with the pronouncements of *State ex rel v. Gee*, Tenn. App. 1977, 565 S.W.2d 498, and to permit the Authority to implead the lessors to enforce its rights against them under their deed. Any judgment in favor of the lessees should include prejudgment interest from the date of their eviction. Any judgment in favor of the Authority should include prejudgment interest from the date of the payment to lessors of the consideration for their deed. Costs of this appeal are taxed against the lessors. The cause is remanded to the Trial Court for further proceedings in conformity with this opinion.

**MODIFIED AND REMANDED.**

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR IN SEPARATE OPINION:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

-16-