City of Nashville *v.* Smith.

| 86· | 213|
| 116 | 648|
| 117 | 762|

## CITY OF NASHVILLE *v.* SMITH.

### (*Nashville.* December 17th, 1887.)

1. TAXATION. *Municipal corporations. Implied exemption, from privilege tax, of water-works used exclusively for corporation purposes.*

   Municipal corporations owning and running water-works for public or corporation purposes *exclusively*, and not "for pecuniary gain or profit," are not liable for the *privilege tax* imposed on "water companies," by Acts, 1887, Chapter 1, Section 4; although they are not *expressly* exempted from such tax by that, or any other, statute.

   Cited: Acts, 1887, Ch. 1, § 4, and Ch. 2, § 2; Acts, 1883, Ch. 105, § 2, and Ch. 114, § 17.

   Case cited and approved: Nashville *v.* The Bank, 1 Swan, 270.

   (See 11 Lea, 172; 13 Lea, 721.)

2. SAME. *Taxpayers' remedy against illegal claim for taxes. Certiorari and supersedeas.*

   A taxpayer cannot, by *certiorari* and *supersedeas*, arrest the execution of a distress warrant, valid on its face and issued by the proper officer, for taxes claimed by the *State*; but may do so as to taxes claimed by a *County.* His remedy, if he conceive the *State's* claim illegal, is to pay the taxes under protest, and sue for their recovery.

   Cited: Code, §§ 926, 928, 931, etc. (M. & V.); Acts, 1873, Ch. 44.

   Case cited and approved: Saunders *v.* Russell, 10 Lea, 293, 299.

---

### FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. W. K. McALISTER, J.

LYTTON TAYLOR for City of Nashville,

E. M. Woodall and Attorney-General Pickle for Smith.

Caldwell, J. The Revenue Act of 1887 provides that water companies in cities, taxing districts, or towns of 40,000 inhabitants or over, shall pay to the State, annually, a privilege tax of $600.

This case presents the question of the liability or non-liability of the city of Nashville under that act for a tax upon the privilege of using and operating its water-works.

Wm. T. Smith, Clerk of the County Court of Davidson County, being of the opinion that such liability existed, and the city failing to take out license, issued a distress warrant in July, 1887, against the city for $1,050, the aggregate tax for the State and county upon that privilege for the current year—$600 for the State and $450 for the county —as appeared by an indorsement upon the back of the warrant.

The city, denying its liability, took the matter before the Circuit Court upon petition for *certiorari* and *supersedeas.*

The petition was dismissed, on motion, and the city has appealed in error to this Court.

The present government of the city was organized, and its functions are now exercised, under Chapter 114 of the Acts of 1883. In the seventeenth Section the powers of the Mayor and City Council are enumerated in thirty-six subsections, the eighth of which is in these words:

"To provide the city with water by water-works, within or beyond the boundaries of the city, and to provide for the prevention and extinguishment of fires, and organize and establish fire companies."

The petition alleges the construction and maintenance of water-works by the city, in its corporate capacity, for the public good, and not as a private enterprise for pecuniary gain or profit.

Upon these grounds the city denies its liability, and seeks to restrain the collection of the tax.

Though the right to own and use water-works is conferred by the language we have quoted from the Act of 1883, there is in that act no express exemption of the city from taxation for the exercise of that right, or for the ownership of the property itself.

Another act passed at the same session, however, provides:

"That the property herein enumerated shall be exempt from taxation, and none other:

"*First*—All property belonging to the United States, to the State of Tennessee, to any county in the State, *or any incorporated city or town in the State, that is used exclusively for public or corporation purposes,*" etc., etc. Acts 1883, Chap. 105, Sec. 2.

The terms there used seem naturally to comprehend an exemption from the burden of an *ad valorem* tax only, and not from that of a *privilege* tax. A later act so limits the exemption in express terms. It is as follows:

" That the property herein enumerated, and none other, shall be exempt from *ad valorem* taxation:

" *First*—All property belonging to the United States, to the State of Tennessee, to any county in the State, *or any incorporated city or town in the State, that is used exclusively for public or municipal corporation purposes,*" etc., etc. Acts 1887, Chap. 2, Sec. 2.

As already stated, it is a *privilege*, and not an *ad valorem*, tax sought to be collected upon the one hand, and resisted upon the other, in this case. The distress warrant is for a tax imposed for " exercising the privilege of running a water company," and the revenue act under which the tax is laid denominates it a privilege tax. Acts 1887, Chap. 1, Sec. 4, pp. 6 and 20.

So that there is not to be found in our statutes any *express exemption* to the city from the tax against which complaint is made in the petition.

But we think an *express statutory exemption* is not required to enable the city to avoid the payment of the tax in such a case as this.

Some things are always presumptively exempted from the operation of general revenue laws, because it is reasonable to suppose that they were not within the intent of the Legislature.

It cannot be supposed that the Legislature would ever lay the burden of taxation upon public property; therefore, however general may be the enumeration of property for taxation, the reasonable

conclusion is that the property held by the State and its municipalities, for governmental purposes, was intended to be excluded, and the law will be administered as excluding it in fact. Cooley on Taxation, 172; 1 Desty on Taxation, page 48, Section 16.

The exemption most clearly arises in this case, by implication, from the public ownership, public nature, and public use of the property, as revealed by the allegations of the petition. *Mayor and Aldermen of Nashville* v. *The Bank of Tennessee*, 1 Swan, 270.

The Circuit Judge dismissed the petition, upon the ground that "the State tax" had not been paid.

That action was clearly correct, so far as the State's part ($600) of the sum sought to be collected is concerned. For, however unjust or illegal the demand against the city may have been, the only course left open to it was to pay the State's part of the same, under protest, and then sue for the recovery thereof within thirty days thereafter. No writ of injunction, *supersedeas*, prohibition, or other process can lawfully issue for the prevention of the collection of revenue claimed to be due the State. Act of 1873, Chap. 44—carried into Code (M. & V.) at §§ 926, 928, 931, etc.

But this Act relates only to revenue due the State, and writs of *certiorari* and *supersedeas* were proper means of bringing the county's demand before the Circuit Court to test its validity.

*Saunders* v. *Russell*, 10 Lea, pages 293, 299, and 300.

The judgment below is affirmed with respect to the State's part of the tax sought to be collected, and reversed as to the county's part. As to the latter, the case will be remanded for further proceedings.

The city will pay all the costs accrued up to this time.