ILLINOIS CENT. R. Co. *v.* GARNER *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed July 27, 1951.

On Petition to Rehear Aug. 31, 1951.

Lucius E. Burch, Jr. and Edward P. Lyons, Jr., both of Memphis, J. H. Wright and R. C. Beckett, both of Chicago, Ill., for appellant.

Lake Hays and Henry W. Dunivant, both of Memphis, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

On August 1, 1947, the Railroad and Public Utilities Commission of Tennessee made a tentative biennial assessment of state ad valorem taxes of the properties of the Illinois Central Railroad for the years 1947 and 1948. The total amount of the assessment was $35,581,254.00. The railroad excepted and appealed to the State Board of Equalization. The basis of the exceptions was that the assessment was erroneous and void in that the Commission failed to recognize the fact that the Illinois Central Railroad and the Yazoo and Mississippi Valley Railroad Company were one and the same entity; that the Commission had, without authority of law, separated the supposed railway systems into two divisions for the purpose of making its assessment, thereby increasing the assessment in excess of the actual cash value of the railroad's property in the State of Tennessee. On November 6, 1947, the State Board of Equalization overruled the

exceptions and approved the combined assessment as made by the Commission.

The next move by the Illinois Central, having exhausted its administrative remedies, was to file suit in the District Court of the United States for the Middle District of Tennessee to enjoin the certification of the assessment to the various counties and municipalities of the State and to restrain the collection of taxes based upon said valuation. The contention made in this suit was that the "due process clause" of the Federal Constitution, Amend. 14, was being violated, and Article 2, Sections 28 and 29 of the Constitution of Tennessee, was also being violated; that the tax so assessed was void, and that "it would be necessary to have a multiplicity of lawsuits by paying the taxes to the State of Tennessee and to the tax collectors of twelve counties and numerous municipalities and to bring suit for the recovery of such illegal taxes from each of them." The United States District Court granted the temporary restraining order thus prayed for by the complainant.

Concurrently with the pendency of the suit in the Federal Court the railroad filed its petition in the Third Circuit Court of Davidson ·County, Tennessee, for a writ of certiorari against the Governor and the State Board of Equalization, seeking to have said assessment set aside upon the ground of its alleged illegality.

On January 26, 1948, the Third Circuit Court decreed that the "said assessments are hereby declared to be illegal, null and void and the same are hereby quashed." The cause was remanded to the State Board of Equalization for further proceedings, including the making of a new assessment for the biennium 1947-1948. The judgment of the court remained unappealed from, and the

injunction suit in the Federal Court was dismissed without prejudice.

Upon the remand of the cause to the Railroad and Public Utilities Commission the amount of the assessment was reduced from $35,581,254.00 to $28,900,000.00. No exception was taken to this last assessment.

On November 30, 1948, the railroad tendered to the County Trustee of Shelby County, Tennessee, the sum of $107,354.00 which was the amount of taxes due upon the new assessment, but the tender was refused on the ground that there was due and owing "interest and penalties" in the amount of $8,581.92. The interest and penalties were claimed to have accrued during the period in which the void assessment had been in effect and the date of the tender.

The above amount was paid under protest and suit was then brought against Shelby County to recover it. The Trustee of Shelby County, and Shelby County, demurred to the original and amended bill upon the ground that "insofar as the assessment was inchoate" it resulted from "the affirmative act of the Illinois Central Railroad Company in obtaining a temporary injunction in the Federal District Court"; that it was the duty of the railroad under Code Section 1535 to pay the tax on the questioned assessment and sue to recover, and it could not litigate the assessment and later claim immunity for paying interest and penalties, even though the said assessment had been adjudged as "null and void" by the Third Circuit Court.

The Chancellor was of opinion that the assessment having been declared to be "null and void" by a court of competent jurisdiction, the demurrer was not well taken. A discretionary appeal was granted from his action in overruling the demurrer. When the cause

came on to be heard in this Court the Chancellor's decree was reversed, MR. JUSTICE PREWITT dissenting. 190 Tenn. 694, 231 S. W. (2d) 352. Upon the remand for further proceedings a Second Amended and Supplemental Bill was. filed by leave of the court in which the railroad reviewed the former proceedings, complaining that the assessment was void and that "Section 1535 of the Code was not an exclusive remedy of a taxpayer against the collection of taxes based upon an illegal or void assessment; that both the remedies of certiorari and injunction are available in addition to the remedy prescribed by Section 1535 of the Code."

To the foregoing Second Amended and Supplemental Bill, the defendants again demurred and the same was sustained, the Chancellor being of opinion that he was bound by the previous opinion of this Court upon the same issue. The cause is now before us on appeal from this ruling of the Chancellor.

We have carefully read and considered the record in the case at bar and find that the error assigned on this appeal is identical with that which was presented in 1950 in the case of *Ill. Cent. R. Co.* v. *Garner*, 190 Tenn. 694, 231 S. W. (2d) 352. In the demurrer to the original bill the County Trustee and the Court made the contention "that Code Section 1535 provides the exclusive remedy for the taxpayer who deems himself aggrieved at the assessment." The Second Amended and Supplemental Bill, which was filed upon the remand by leave of the Chancellor, does not differ from the first original bill other than to recite in detail the contents of the bill which was filed in the Federal District Court. The sum and substance of the assignment of error on the present appeal is that the Chancellor erred in sustaining the demurrer because:

"(a) Section 1535 of the Code of Tennessee, as construed by the Honorable Chancellor, would provide the sole and exclusive remedy of a taxpayer against collection of taxes based upon an illegal or void assessment; whereas both the remedies of certiorari and injunction are available in addition to the remedy prescribed by Section 1535 of the Code of Tennessee.

"(b) The decree of the honorable Chancellor is contrary to the final judgments of the Third Circuit Court of Davidson County and of the United States District Court at Nashville, which judgments are final and unappealed from and are res judicata and could not be lawfully nullified by the learned Chancellor in this case."

Contention is further made that:

"(d) The decree of the honorable Chancellor establishes the rights and liabilities of Appellant in a manner inconsistent with the previous final judgments of courts of competent jurisdiction, and thereby deprives the Appellant of its property without due process of law and deprives the Appellant of the equal protection of the laws contrary to the Constitution of the United States."

While the argument of learned counsel for appellant is persuasive in that the taxpayer should not be compelled to pay interest and penalties upon an illegal or void assessment, it does not follow that the Chancellor's decree is incorrect. Nor is it correct to say that his decree "establishes rights and liabilities of appellant in a manner *inconsistent with the previous final judgments of courts of competent jurisdiction.*" The United States District Court made no pronouncement adjudging the rights of the parties. The court merely entered a temporary restraining order against certifying the amount of the assessment to the several counties, and later dismissed the cause without prejudice. The effect of the judgment

in the Third Circuit Court of Davidson County, Tennessee, was to require the Railroad and Public Utilities Commission to make a new assessment of the properties in question.

■ Reasoning from an equitable or moral viewpoint the counsel presents a strong case for reversal. But from the standpoint of legislative policy, involving the importance to the State of the prompt collection of taxes, the contention is untenable. Conceding as we do that the judgment of the Third Circuit Court of Davidson County, Tennessee, was correct, in that the assessment was illegal, it does not follow that the payment of taxes can be postponed at the instance of the taxpayer until the amount of the tax is judicially determined. The fact that the *method of making the assessment* and determining the amount of the tax is illegal, or void, is no excuse for a refusal to comply with Code Section 1535, which reads in part as follows:

"* * * Provided, that if any railroad or public utility has been or shall hereafter be aggrieved at the assessment so fixed and certified by the board of equalization, such railroad or public utility shall be required to pay the taxes due and owing the State of Tennessee, the counties and municipalities, upon the full value of said assessment, under protest, and upon termination of any proceeding that may be instituted in any of the courts of this state or in any of the courts of the United States of America by such railroad or public utility to review such assessment, the State of Tennessee, the counties and municipalities, and any school district, road district, or other taxing district to which such taxes have been paid, shall refund in cash and with interest, such part of the taxes so paid to them as may be adjudged to be excessive or illegal by any final decree or order entered in any

such proceeding, or in default of such refund, such railroad or public utility is authorized to take credit for the amount of such illegal or excessive tax with interest against any tax thereafter becoming due from and payable by such railroad or public utility, to the State of Tennessee, or any county, municipality, road district, school district, or any other taxing district authorized * * * to levy taxes.''

It thus plainly appears that if the assessment is excessive or *illegal* the railroad may recover it with interest, or have credit for it upon any later assessment. The taxpayer has suffered no injury by paying his tax as thus prescribed by the Code. Nor has any constitutional right been violated. The statute is mandatory.

Counsel for appellant advances the following as a ''Proposition of Law'', the same being italicized on the brief:

*''Th Court will not be bound by a former erroneous opinion that has not resulted in the creation of a rule of property and is between the same parties litigant, and this is particularly true where the former opinion resulted only in a remand of the case and did not purport finally to settle the rights of the parties.''*

It is thus assumed that our opinion as reported in 190 Tenn. 694, 231 S. W. (2d) 352, holding that Code Section 1535 was the exclusive remedy of the aggrieved taxpayer, was erroneous. Having followed the express provisions of the statute we cannot do otherwise than to declare that the opinion was correct at the time it was released and it is the law now governing the rights of the parties. In other words Section 1535 of the Code, as amended by Chapter 7 of the Public Acts of 1939, is the exclusive remedy of a taxpayer where there has been an excessive or illegal assessment of his property.

It is further urged upon us as a sound "proposition of law" the following:

"*Section 1535 of the Code does not provide the only method in which the taxpayer can forestall the accrual of interest and penalties under Code Section 1547, if the assessment is Void as distinguished from merely Excessive or Erroneous*".

Several of the cases cited by counsel, and particularly *Briscoe* v. *McMillan*, 117 Tenn. 115, 100 S. W. 111, *Ward* v. *Alsup*, 100 Tenn. 619, 46 S. W. 573, and *Smoky Mountain Land Co.* v. *Lattimore*, 119 Tenn. 620, 105 S. W. 1028, hold that where an ad valorem assessment is challenged on the ground of illegality the remedy of the taxpayer is by certiorari to review the assessment. The several Code Sections upon which these decisions seem to have been rested, 1790-1799, do not sustain the contention of the appellant.

In the case of *American Can Co.* v. *McCanless*, 183 Tenn. 491, 193 S. W. (2d) 86, these same sections of the Code are again considered and it is expressly held that the taxpayer's *sole and exclusive remedy* was to pay the tax demanded under protest and then sue within thirty (30) days to recover the tax illegally exacted. In *Lyons* v. *Lay*, 179 Tenn. 388, 166 S. W. (2d) 778, 779, Mr. Justice Prewitt, speaking for the Court said: "The payment under the protest statute is applicable in every case, even though in particular instances it may work a hardship." Also in *City of Nashville* v. *Smith*, 86 Tenn. 213, 6 S. W. 273, 275, it was held "* * * however unjust or illegal the demand against the city may have been, *the only course left open to it* was to pay the state's part of the same under protest, and then sue for the recovery. thereof within 30 days thereafter." (Emphasis supplied.) The foregoing was cited and reaffirmed by Mr.

JUSTICE CHAMBLISS in *American Can Co.* v. *McCanless,* supra, 183 Tenn. at page 498, 193 S. W. (2d) at page 89. In the same case it is said: "The state does not litigate as an individual, and does not allow its demands for taxes to be held up pending controversy with an individual."

The laws of the State afford adequate protection to every taxpayer against illegal and void assessments. If he elects to litigate with the State and thus postpone the payment of the tax he does so at the peril of paying interest and penalties. "Even if the taxpayer is successful to the extent of having a portion of the tax invalidated by the courts, he is nevertheless liable for the penalty for failure to pay the portion of the tax sustained." 51 Am. Jur., p. 852, Sec. 975.

Penalties in a sense are odious, but they are of necessity imposed to induce the prompt payment of taxes to the end that the power and authority of the State may not be impaired for lack of revenue.

The assignments of error are overruled and the Chancellor's decree is affirmed.

PREWITT, TOMLINSON, and BURNETT, JJ., concur.

GAILOR, J., not participating.

### ON PETITION TO REHEAR

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The principal complaint in the petition to rehear, filed by counsel for the railroad, is "that the Court overlooked the fact that the taxes in this case are not *excise* or *privilege* taxes, but are *ad valorem* taxes." It is again urged upon us "that where an ad valorem assessment is

challenged on the ground of illegality the taxpayer has the remedy of injunction.''

It is true that the cases cited in the original opinion involve the collection of excise or privilege taxes. *American Can Co.* v. *McCanless,* 183 Tenn. 491, 193 S. W. (2d) 86; *Lyons* v. *Lay,* 179 Tenn. 388, 166 S. W. (2d) 778; and *City of Nashville* v. *Smith,* 86 Tenn. 213, 6 S. W. 273. Conceding, as we do, that the cases referred to involve the collection of *excise taxes* and not *ad valorem* taxes, they nevertheless sustain the proposition that where the statute provides the taxpayer a complete and adequate remedy to compel reimbursement of taxes wrongfully exacted he has no other remedy. There is no reason to seek another and different remedy.

The statute which controlled the Court's opinion in *American Can Co.* v. *McCanless* and other cases was enacted in 1873, and brought into the Code as Sections 1793, 1794 and 1795. The intention of the Legislature was to provide for the prompt and efficient collection of ''revenue'', and at the same time provide the taxpayer an adequate remedy to have reimbursement of all taxes wrongfully exacted. It is provided by Section 1794 that ''There shall be no other remedy'' for the taxpayer than to sue, within thirty days, and recover it from the taxing authority.

The foregoing Code Sections make no distinction between *excise* taxes and *ad valorem* taxes. They relate to the collection of *''revenue''*, and the remedy to recover *revenue* illegally assessed and wrongfully exacted. It is not reasonable to suppose that the Legislature intended to provide an exclusive remedy for citizens charged with the payment of an *excise* tax while others, assessed with an *ad valorem* tax, should be permitted to pursue another and different remedy. In *Louisville & N. R. R. Co.* v.

*State of Tennessee et al.,* 55 Tenn. 663, a case involving the validity of an *ad valorem* assessment upon railroad property, the railroad made no contention that the Act of 1873 did not apply to *ad valorem* taxes, but insisted that it was unconstitutional. While the Court elected to decide the case on its merits, i. e. the validity of the assessment, it made the following comment on the applicability of the statute: ''The remedy provided by the statute is ample, speedy and certain, and the indemnity of the injured citizen is absolutely assured.''

Now Code Section 1535, under which the assessment was made in the instant case, contains substantially the same provisions as Code Sections 1793, 1794 and 1795, and is applicable alone to railroads and other public utilities. It expressly requires the taxpayer to pay under protest, if the tax for any reason is alleged to be illegal or unjust, and sue for reimbursement.

The similarity between the provisions of the Act of 1873 and Code Section 1535 requires that they should be given the same construction. It is immaterial that the tax in one case is an *excise* tax and in the instant case an *ad valorem* tax. We are here concerned with the remedy to recover the tax and not the nature of the tax involved.

It is true that the remedy for contesting its tax liability in the case at bar is as indicated in *Briscoe* v. *McMillan,* 117 Tenn. 115, 100 S. W. 111; and *Ward* v. *Alsup,* 100 Tenn. 619, 46 S. W. 573; i. e. certiorari and supersedeas to the State Board of Equalization. But the railroad is still required to pay the amount assessed and sue for reimbursement. If the court should hold the assessment to be void, or otherwise illegal, the State, Counties and Municipalities, must refund at once the amount each had received under the illegal assessment, ''together with such interest as the court may determine to be proper,

not exceeding the legal rate". Code Section 1793. Code Section 1535 is to the same effect. The judgment of the court, voiding the assessment, would be conclusive of the taxpayer's right to have restitution.

Responding further to the petitioner's insistence "that where an *ad valorem* assessment is challenged on the ground of illegality the taxpayer has the remedy of injunction", we think the great weight of authority supports the Court's opinion that this remedy is available *only* when the taxpayer has not a full, free and adequate remedy at law. Thus in *American Airways* v. *Wallace,* D. C., 57 F. (2d), 877, 878, 879, it is said:

"No one would contend that the collection of a tax may be enjoined if the taxpayer has a full and adequate remedy at law. * * * The authorities upon this question are uniform and too numerous for collation." See also *Elgin* v. *Hessen,* D. C., 282 F. 281, to the same effect.

In Cooley on Taxation, Vol. 4, Fourth Edition, Section 1647, it is said:

"Injunctive or other equitable relief will not be denied on the ground of a remedy at law *unless such remedy is adequate and complete;* and if it is doubtful whether there is an adequate remedy at law, equity will take cognizance. * * * Payment of a tax and a remedy by suit to recover back the taxes paid where they are illegal or unauthorized is generally held such an adequate remedy as to preclude injunctive or other equitable relief against the collection of the tax". (Emphasis supplied.)

But aside from the foregoing authorities the petitioner makes no contention that the "payment under protest" statute does not provide a complete and adequate remedy; nor is it even suggested that it is unconstitutional.

In the final and concluding paragraph of the petition complaint is made "that nowhere in the opinion

of the Court is there a discussion of the point" to the effect "that equity does not permit the imposition of a penalty or interest if the contest of tax liability has been undertaken in good faith." The point was very forcefully made on the brief of counsel and also in oral argument. But it was pretermitted because we felt that the provision of the statute was controlling rather than the principles of equity. There is no provision in the statute relieving a taxpayer from liability for interest or a penalty where a contest of his tax liability is undertaken in good faith. If the petitioner may for that reason postpone the payment of taxes it follows that every other railroad and every public utility may do likewise with the result that the statute would become a dead letter.

The petition to rehear is denied.

PREWITT, TOMLINSON and BURNETT, JJ., concur.

GAILOR, J., not participating.