# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 10, 2003 Session

# MAURY COUNTY, TENNESSEE by and through MAURY REGIONAL HOSPITAL v. TENNESSEE STATE BOARD OF EQUALIZATION, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 00-1462-I    Irvin H. Kilcrease, Jr., Chancellor

---

### No. M2002-00501-COA-R3-CV - Filed April 9, 2003

---

Following a de novo hearing pursuant to Tennessee Code Annotated section 67-5-1511(b), the Chancery Court of Davidson County upheld the final decision of the Assessment Appeals Commission of the Tennessee State Board of Equalization in a determination that property owned by Maury Regional Hospital and located in Marshall County, Tennessee was subject to ad valorem taxation by Marshall County. Maury Regional Hospital appeals the decision of the Chancellor. The decision of the trial court is reversed, and the Marshall County property known as Marshall Medical Center is held to be exempt from ad valorem taxation.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Reversed and Remanded

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and VERNON NEAL, SP. J., joined.

Christopher M. Was and Robert B. Littleton, Nashville, Tennessee, for the appellant, Maury County, Tennessee by and through Maury Regional Hospital.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and Mary Ellen Knack, Assistant Attorney General, for the appellee, Tennessee State Board of Equalization. Robert O. Binkley, Lewisburg, Tennessee, for the appellee, Marshall County, Tennessee and Marshall County Assessor of Property.
Robyn E. Smith and William B. Hubbard, Nashville, Tennessee, for Tennessee Hospital Association and William L. Penny, Nashville, Tennessee, for Hospital Alliance of Tennessee.

**OPINION**

Maury Regional Hospital is a not for profit corporation owned by Maury County, Tennessee and operated under authority of Chapter 125 of the Private Acts of 1996. The counties composing the region are Giles, Lawrence, Wayne, Perry, Lewis, Hickman, Marshall and Maury counties.

Prior to the mid 1990's, Maury Regional Hospital was a primary care hospital with an expanding base of specialty care. The ability to sustain specialty care in areas like pediatrics, cardiology, oncology and radiation depends, in substantial measure, upon referrals from smaller primary care hospitals within the surrounding geographic area. During the mid 1990's, smaller hospitals within the region of Maury Regional Hospital and counties adjacent to the region were up for sale, and Nashville hospitals, primarily Baptist and Columbia-HCA, began to purchase them. The Board of Directors of Maury Regional Hospital determined that, if it was to remain competitive in specialty care and was to retain and expand its status as a specialty care hospital, it was necessary to join the competition for the purchase of smaller hospitals within the region. In furtherance of this purpose, Maury Regional purchased Marshall Medical Center in Lewisburg and Lewis Community Hospital in Hohenwald and entered into a long term lease to operate Wayne County Hospital in Waynesboro.

The acquisition of Marshall Medical Center occurred March 13, 1995, when Maury Regional purchased the hospital from Lewisburg Community Hospital, Inc. and OnNda Health Corp., both being for-profit corporations. Since both prior owners of Marshall Medical Center were for-profit corporations, the hospital was subject to ad valorem taxation by Marshall County, and Maury Regional Hospital paid the full amount of the 1995 ad valorem taxes assessed by Marshall County against Marshall Medical Center.

In 1996, Maury Regional Hospital applied for exemption of Marshall Medical Center from ad valorem taxation under Tennessee Code Annotated section 67-5-203. This application for exemption was denied by the Marshall County Board of Equalization, and, upon appeal to the State Board of Equalization, an Administrative Law Judge denied the exemption. Maury Regional appealed to the Assessment Appeals Commission of the State Board of Equalization, which upheld denial of the exemption. Maury Regional Hospital then appealed, pursuant to Tennessee Code Annotated section 67-5-1511, to the Chancery Court of Davidson County where the case was heard upon the administrative record and upon additional and supplemental evidence. Relying primarily on *City of Knoxville v. Park City*, 172 S.W. 286 (Tenn. 1914), the Chancellor held that Marshall Medical Center was primarily a facility for the treatment of Marshall County patients and did not qualify for ad valorem tax exemption under the "incidental use" doctrine. Maury Regional Hospital timely appealed.

The hearing in the chancery court was pursuant to Tennessee Code Annotated section 67-5-1511(b)(1998), which provides, in part: "The judicial review provided in subsection (a) shall consist of a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue." Our review of

the decision of the chancellor is pursuant to Tennessee Rule of Appellate Procedure 13(d), which provides for a *de novo* review of the facts with a presumption of the correctness of the trial court finding unless the preponderance of the evidence is otherwise. As to review of questions of law, no such presumption attaches. *See Richardson v. Assessment Appeals Comm'n*, 828 S.W.2d 403 (Tenn. Ct. App. 1991).

Appellant raises two issues on appeal which, paraphrased for the purposes of this opinion, assert:
(1) that the "incidental use" doctrine is inapplicable because the enabling statute, Chapter 125 of the Private Acts of 1996, authorizes Maury Regional Hospital to transend county boundaries and serve a multi-county region;
(2) that even if the "incidental use" doctrine applies, it provides no basis for defeating the exemption under the facts of the case.

The intention of Maury Regional Hospital in the 1995 acquisition of Marshall Medical Center is clear and undisputed in the record. Mr. Walter and other hospital board members observed the trend in the health care industry whereby large hospitals acquired smaller hospitals in surrounding counties. Both the large hospital and its smaller hospitals provided primary health care services, but, if patients needed specialty care such as cardiology or oncology services, the smaller hospitals referred their patients back to the large parent hospital where specialty care services were centralized. When smaller hospitals in the region served by Maury Regional became available for purchase, competing Nashville hospitals began acquiring the smaller hospitals. Unless Maury Regional did likewise, it would be relegated to a "stand alone" hospital and essentially limited to primary care. By acquiring smaller hospitals in Lewis, Wayne and Marshall Counties, Maury Regional protected and stabilized its standing as a referral hospital and correspondingly increased and improved its specialty care facilities. However, it is not the intention of Maury Regional Hospital in making these acquisitions that is determinative of this case. It is, rather, the intention of the General Assembly in changing the name and the mission of Maury Regional Hospital from a county orientated medical facility to a regional medical facility on which the case turns.

The History of Maury Regional Hospital

Maury County Hospital was born pursuant to the enactment of Chapter 448 of the Private Acts of 1949. Section one of this private act provided:

> SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, That Maury County, Tennessee, is hereby authorized and empowered to build, purchase, lease, own, operate, equip and maintain a general hospital in said County, acting by and through its Quarterly County Court with authority to either accept the legal title to such hospital to be operated by some non-profit corporation, either organized for such purpose or heretofore existing, or to own such hospital and turn over the maintenance and operation thereof to non-profit corporation, or to own,

maintain, and operate such hospital under the supervision of said Quarterly County Court.

Following the construction phase of the hospital, Chapter 448 of the Private Acts of 1949 was amended by Chapter 373 of the Private Acts of 1953. This latter Act provided, in part: "*Be it further enacted*, That said Hospital shall be known and designated as the Maury County Hospital and that the Health Center shall be known and designated as the Maury County Health Center." The Act then specifically defined the real estate comprising Maury County Hospital as being a 43.3 acre tract located in the 9th Civil District of Maury County. The Act further provided:

> SECTION 3. *Be it further enacted*, That said Hospital and Health Center shall be controlled by a Board of Trustees, seven (7) in number, one of whom shall be a woman and all shall be citizens and residents of Maury County, over the age of 21 years who shall serve without compensation (Said Office being honorary and not constituting a county office), the manner and for the terms hereinafter provided; and provided that no member of said Board of Trustees shall be a physician or surgeon licensed to practice in this County and State; nor a member of the Maury County Quarterly Court; and provided further that no member of the Board of Trustees and/or no member of the County Quarterly Court shall profit financially by reason of the operation of this Hospital and Health Center; and further that no property belonging to said Hospital and Health Center shall be loaned.

Chapter 199 of the Private Acts of 1971 increased the membership of the hospital committee of the quarterly court from three to five members, this committee serving in an advisory capacity.[1] Chapter 43 of the Private Acts of 1973 provided for certain housekeeping amendments that are not material to the mission of the hospital.

By Chapter 162 of the Private Acts of 1988, the General Assembly provided: "SECTION 1. Chapter 448 of the Private Acts of 1949 as amended, is amended by deleting in section 13 the language 'That said Hospital shall be known and designated as the Maury County Hospital' and inserting instead the language 'That said hospital shall be known and designated as the Maury Regional Hospital.' "

By Chapter 64 of the Private Acts of 1989, section 7 of Chapter 373 of the Private Acts of 1953 was amended by making the entire Maury County Legislative Body constitute the Hospital and Health Committee of the Maury County Legislative Body whose duties would be to advise and consult with the Hospital Board of Trustees concerning measures and matters affecting the hospital and health center.

---

[1] Chapter 199 of the Private Acts of 1971 and all subsequent amendments to the earlier Private Acts were subject to the "home rule" provisions recommended by the Constitutional Convention of 1953 and approved in statewide referendum.

Rather dramatic changes were effected by Chapter 2 of the Private Acts of 1995 providing, in part:

> AN ACT to restructure the Maury Regional Hospital and to repeal Chapter 448 of the Private Acts of 1949, and to repeal Chapter 373 of the Private Acts of 1953, as amended by Chapter 199 of the Private Acts of 1971, Chapter 43 of the Private Acts of 1973, Chapter 162 of the Private Acts of 1988, Chapter 64 of the Private Acts of 1989.
>
> BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:
>
> SECTION 1.  A hospital, known as Maury Regional Hospital, is created and established for and on behalf of Maury, County and is owned by Maury County.
>
> SECTION 2.  The hospital is composed of those tracts or parcels of land, together with all buildings or other improvements thereon and all appurtenances thereto, whether within or without Maury County, in order to fulfill the hospital's mission of providing health care services to the region; provided, however, that the county commission by resolution shall approve leases of real property to be used by the hospital and all purchases and sales of real property or interests therein except purchases of real property owned by the hospital on September 1, 1994, and the Lewisburg Community Hospital properties now owned by OnNda Company which may be purchased or leased by the hospital board of trustees.  All sales or leases of real property or interests therein, whether acquired by the hospital before or after September 1, 1994, shall be approved by resolution of the county commission.

Less than one year later, the General Assembly, by Chapter 125 of the Private Acts of 1996, further defined the expanded mission of Maury Regional Hospital.  This Act provided, in part:

> SECTION 1:  A hospital, known as Maury Regional Hospital, and owned by Maury County, was created and established by Chapter 448 of the Private Acts of 1949, as amended by Chapter 373 of the Private Acts of 1953, Chapter 199 of the Private Acts of 1971, Chapter 43 of the Private Acts of 1973, Chapter 162 of the Private Acts of 1988, and Chapter 64 of the Private Acts of 1989, all of which were repealed by Chapter 2 of the Private Acts of 1995.  Chapter 2 of th Private Acts of 1995 is hereby amended to read as provided in this act which shall constitute the sole private act relative to Maury Regional Hospital.
>
> SECTION 2.  The hospital is composed of those tracts or parcels of land, together with all buildings or other improvements thereon and all appurtenances thereto, whether within or without Maury County, in order to fulfill the hospital's mission of providing health care services to the region.

. . . .

SECTION 5.

(a) The Board of Trustees shall be vested with full, absolute and complete authority and responsibility for the operation, maintenance, management, conduct and control of the business and affairs of the hospital herein created. Such business and affairs may include without limitation, the provision of health care services in the home and the ownership, sponsorship or participation in any alternative health care delivery systems, notwithstanding that as a consequence of such exercise of powers, it engages in activities that may be deemed within the contemplation of the antitrust laws of the State or of the United States. Subject to the provisions of subsection (b), the Board of Trustees of Maury Regional Hospital shall have the authority to acquire, to lease, to sell or to dispose of real property determined by the board to be appropriate for the operation of the hospital and the provision of health care services to the region. Such operation, maintenance, management, conduct and control shall not be inconsistent with existing contractual obligations of Maury County, Tennessee. Such authority shall include, but not be limited to, the establishment, promulgation, and enforcement of rules, regulations and policies necessary to direct and supervise the operation and maintenance of all property; the administration of all financial affairs, including the execution of all documents necessary to administer such financial affairs; except the county commission shall approve the borrowing of funds which would adversely affect the ability of Maury County to incur indebtedness; the execution of all contracts, agreements, leases, deeds and other instruments in order to accomplish the purposes of the hospital, the ownership or leasing of property whether inside or outside Maury County subject to the provisions of subsection (b); and the employment, compensation, discharge and supervision of all personnel; and to adopt property bylaws which shall meet the standards as set by the Joint Commission on the Accreditation of Health Care Organizations.

The Regional Purpose Question.

Certain long settled general principles of law relative to state and local governments in Tennessee, particularly as those principles relate to the power to tax, are a necessary backdrop to a determination of the controlling issue in this case.

" 'Counties owe their creation to the statutes, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe, and impress all the liabilities to which they are subject.' * * *

"It has been tersely said 'the limits of all powers of counties, except those necessarily implied, must be found within the four corners of the statutory provision made by the Legislature.' 4 Am. & Eng. Enc. L. 389."

-6-

*State, ex rel. Citizens v. Lebanon & Nashville Tpk. Co.*, 268 S.W. 627, 630 (Tenn. 1925)(quoting *Burnett v. Maloney*, 37 S.W. 689 (Tenn. 1896)). Counties have no inherent power of taxation and can impose taxes only in the manner and under such authority as is expressly conferred by statute. *Southern Ry. Co. v. Hamblen County*, 92 S.W. 238, 239 (Tenn. 1906). In the absence of constitutional restrictions, the power of the legislature over local taxation is plenary. *Quinn v. Hester*, 186 S.W. 459, 460 (Tenn. 1916).

> "The municipal corporations of a state, having no inherent power to tax, must take such power as is conferred under the conditions and limitations that may be prescribed, and only for such purposes as may be expressed. This is fundamental. The authority is not only a delegated authority conferred by the state, but it is to be assumed that the state has given all it intended should be exercised, and the grant, like that of all special and limited grants, is to be strictly pursued."

*Southern Ry. Co.*, 92 S.W. at 240 (quoting Cooley on Taxation (3d Ed.) pp. 554, 555).

Article II, section 28 of the Constitution of Tennessee provides in relevant part:

> **Sec. 28. Taxable Property - Valuation - Rates.** - In accordance with the following provisions, all property real, personal or mixed shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, . . . .

Article II, section 28 of the Constitution of Tennessee has the same meaning in relevant part today as did the same provision in the Constitution of 1870. *Albert v. Williamson County*, 798 S.W.2d 758 (Tenn. 1990). However, "[a]s a general rule of statutory construction, a change in the language of the statute indicates that a departure from the old language was intended." *Lavin v. Jordan*, 16 S.W.3d 362, 369 (Tenn. 2000); *see also Dunn v. Hackett*, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992).

With this brief insight into controlling principles of law, we now turn to the Acts of the legislature under which the issues in this case must be resolved.

Article II, section 28 of the Constitution of Tennessee provides that all property shall be subject to taxation but provides that the legislature may except from such taxation property held by the state, counties, cities or towns that is used exclusively for public or corporation purposes. Within the scope of such constitutional provision, the legislature adopted Tennessee Code Annotated section 67-5-203 (a)(1)(1998) which provides: "All property of the United States, the state of Tennessee, any county, or any incorporated town, city or taxing district in the state that is used exclusively for public, county or municipal purposes shall be exempt from taxation; . . . ."

Neither Article II, section 28 of the Tennessee Constitution nor Tennessee Code Annotated section 67-5-203 (a)(1) restricts the exemption to property located within the geographical limits of a county. The constitutional provision requires only that the property be used exclusively for "public or corporation purposes." (emphasis added) Tennessee Code Annotated section 67-5-203 (a)(1) is disjunctive, providing the exemption for property of "any county, that is used exclusively for public, county or municipal purposes." (emphasis added)

In the case primarily relied upon by Appellees and by the trial court, the territorial restriction barring tax exemption for property outside of corporate boundaries was effected, not by Article II section 28 of the Constitution of Tennessee nor by Tennessee Code Annotated section 67-5-203 (a)(1), but by the provisions of the enabling act of the City of Knoxville. In *Park City*, the enabling act was the municipal charter of the City of Knoxville originally enacted as Chapter 207 of the Acts of 1907 by which Knoxville was "authorized to provide the city of Knoxville with water by a system of waterworks to be established within or beyond the boundaries of the city." *Park City*, 172 S.W. at 287 (emphasis added).

Prior to Chapter 162 of the Private Acts of 1988, the mission, name and purpose of the hospital was primarily limited to Maury County. The Act of 1988 changed the name of the hospital to Maury Regional Hospital, foreshadowing the events that followed. Chapter 2 of the Private Acts of 1995 dramatically altered the purpose and mission of Maury Regional Hospital. Section II of that act provided, in part, that Maury Regional Hospital was authorized to own property "whether within or without Maury County, in order to fulfill the hospital's mission of providing health care services to the region." By Chapter 125, section 2 of the Private Acts of 1996, the charter of the hospital was re-stated with a reemphasis that the mission of the hospital was that "of providing health care services to the region." The evidence at trial indicated that the region comprising the service area of Maury Regional Hospital encompassed the counties of Marshall, Giles, Lawrence, Wayne, Lewis, Perry, Hickman and Maury.[2]

The changes effected by Chapter 162 of the Private Acts of 1988, Chapter 2 of the Private Acts of 1995 and Chapter 125 of the Private Acts of 1996 must have had some purpose. "The Legislature must be presumed not to have intended to do a useless and vain thing; . . . ." *Texas Gas Transmission Corp. v. Atkins*, 327 S.W.2d 305, 307 (Tenn. 1959); *State v. Jackson*, 60 S.W.3d 738, 742 (Tenn. 2001). As a general rule of statutory construction, a change in the language of a statute indicates that a departure from the old language was intended. *See Lavin,* 16 S.W.3d at 369.

Finally, we must determine the power of the legislature, as opposed to the power of a county, in regard to taxation. Is the legislature authorized to disregard county boundaries and declare public purpose to be regional? As the legislature is all powerful in the absence of constitutional restraint, the answer is in the affirmative. In a similar context, the Supreme Court of Tennessee held:

---

[2] The proof established that more than ninety percent (90%) of the admissions to Maury Regional Hospital came from these eight counties.

This involves a consideration of the relation sustained by a county as a public corporation to the state. In *Demoville v. Davidson County*, 87 Tenn. (3 Pickle) 214, 225, 10 S.W. 353, 356, it was said:

"The county is but an emanation from the state. It does not exercise any power or franchise under any contract between itself and the state. The latter creates, and it may destroy. The state delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes."

In the absence of constitutional restraints, and our Constitution contains none, it was declared in *Luehrman v. Taxing District*, 2 Lea (70 Tenn.) 425, 438, the maxim of republican government that local affairs should be managed in the local district is subject to such exceptions as the legislative power shall see fit to make.

"The Legislature has the power to do whatever is not expressly, or by necessary implication, forbidden by the Constitution." *Id.*; *Meriwether v. Garrett*, 102 U.S. 511, 26 L.Ed. 197; Redistricting Cases, 111 Tenn. 234, 290, 80 S. W. 750.

It follows that a county as a mere arm of the sovereign power can have, as against the legislative power of the sovereign, no vested rights in the powers conferred upon it for governmental purposes, and that the Legislature has plenary power to make provision respecting and to direct the expenditure of the funds of a county raised and held by it under or based upon the taxing power delegated to it.

*State, ex rel. Bell v. Cummings*, 172 S.W. 290, 290-91 (Tenn. 1914); *see also Demoval v. Davidson County*, 10 S.W. 353, 356 (Tenn. 1889); *Metro. Dev. & Hous. Agency v. S. Cent. Bell Tel. Co.*, 562 S.W.2d 438 (Tenn. Ct. App. 1977). In this latter case, the court adopted the observations of the United States Supreme Court in *City of Worcester v. Worcester Consol. St. Ry. Co.*, 196 U.S. 539 (1905), wherein it is said:

A municipal corporation[3] is simply a political subdivision of the state, and exists by virtue of the exercise of the power of the state through its legislative department. The legislature could at any time terminate the existence of the corporation itself, and provide other and different means for the government comprised within the limits of the former city. The city is the creature of the state.

*Metro. Dev.*, 562 S.W.2d at 443 (quoting *City of Worcester*, 196 U.S. at 458-49).

The legislature has delegated to the counties authority to levy an ad valorem tax on all property subject to such taxation. Tenn. Code Ann. § 67-5-102.[4] Article II, section 28 of the Constitution of Tennessee reserves to the legislature the power to except from such taxation property

_____

[3] Counties in Tennessee are municipal corporations. *White's Creek Tpk. Co. v. Davidson County*, 82 Tenn. 73 (Tenn. 1884); *Weakley County Mun. Elec. Sys. v. Vick*, 309 S.W.2d 792 (Tenn. Ct. App. 1957); *Jenkins v. Loudon County*, 736 S.W.2d 603 (Tenn. 1987).

[4] This is true as to all properties in the county not owned by public utilities. Assessment of the property of the public utilities is done by the comptroller of the treasury pursuant to Tennessee Code Annotated § 67-5-1301.

that is held by the state, counties, cities or towns and used exclusively for public or corporation purposes. Pursuant to this constitutional power, it is the legislature, not the county, that declares what property is protected by the exemption. Tenn. Code Ann. § 67-5-203(a)(1).

It is undisputed, and indeed indisputable, that Maury Regional Hospital holds its property for a public purpose within the meaning of both Article II, section 28 of the Tennessee Constitution and Tennessee Code Annotated section 67-5-203 (a)(1). The legislature, in 1995 and 1996, altered the mission of Maury Regional Hospital from that of providing medical services in Maury County, Tennessee to a mission of "providing health care services to the region." The proof in the case defines the region, and Marshall County is within that region. By any analysis associated with logic, the legislature has determined that Maury County holds its regional property for a public purpose and that property so held within the region is exempted from taxation by counties within the region.

The Incidental Use Doctrine

The doctrine of incidental use is neither constitutionally mandated nor legislatively imposed but is of judicial origin. Under existing case law, the doctrine applies when the "public purpose" is limited to a county public purpose as in *Park City*. It has not heretofore been applied to a situation where the legislative enabling act envisions a regional purpose rather than a county purpose.

The doctrine of incidental use as applied to ad valorem taxation defies precise description but has its origin in Tennessee in municipal waterworks' cases beginning with *City of Nashville v. Smith*, 6 S.W. 273 (Tenn. 1887) and the same case on proceedings after remand, *Smith v. City of Nashville*, 12 S.W. 924 (Tenn. 1890).

> But we think an *express statutory exemption* is not required to enable the city to avoid the payment of the tax in such a case as this. Some things are always presumptively exempted from the operation of general revenue laws, because it is reasonable to suppose that they were not within the intent of the legislature. It cannot be supposed that the legislature would ever lay the burden of taxation upon public property; therefore, however general may be the enumeration of property for taxation, the reasonable conclusion is that the property held by the state and its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact. Cooley, Tax'n, 172; 1 Desty, Tax'n, p. 48, § 16. The exemption most clearly arises, in this case, by implication from the public ownership, public nature, and public use of the property, as revealed by the allegations of the petition. *Mayor, etc., v. Bank*, 1 Swan, 270.

*City of Nashville v. Smith*, 6 S.W. at 274. On appellate proceedings following remand, the supreme court held that waterworks' properties owned by a municipality were not subject to ad valorem taxation if such property were used in the fulfillment of the public purpose of supplying water to the municipality and not for private profit. *Smith v. City of Nashville*, 12 S.W. 924.

Neither statute nor case law clearly defines parameters of the incidental use doctrine. It is discussed and applied in a number of fact sensitive cases with varying results. *Park City*, 172 S.W. at 288; *City of Chattanooga v. Marion County*, 315 S.W.2d 407, 409-10 (Tenn. 1958); *Johnson City v. Weeks*, 180 S.W. 327, 328-29 (Tenn. 1915); *Johnson City v. Booth*, 261 S.W.2d 820, 823-24 (Tenn. Ct. App. 1953). In *Park City*, exemption was denied to waterworks property owned by Knoxville within the corporate limits of Park City. In *Marion County,* electric power board property owned by Chattanooga in Marion County was exempted from ad valorem taxation by Marion County on the basis that revenue from Marion County customers constituted only a small fraction of the revenues of the Chattanooga Power Board. In *Johnson City v. Weeks*, property owned by Johnson City and used for a waterline extending beyond the corporate limits of the city in order to serve a national home for disabled volunteer soldiers was exempted from ad valorem taxation by Washington County. In *Johnson City v. Booth*, extensive property holdings in Unicoi County owned by Johnson City as a watershed for its municipal water system were held to be exempted from taxation by Unicoi County. Thus, cases upholding the exemption have ranged from the minuscule property holdings in *Marion County* to the extensive property holdings in *Johnson City v. Booth.*

It is undisputed that Maury Regional Hospital is a not for profit corporation, wholly owned by Maury County, Tennessee and that all of its properties are held for general public purposes without individual profit. As far back as *City of Nashville v. Smith*, exemption of such property so held has been the rule, and taxation thereof has been the exception under the incidental use doctrine. The effects of urban growth, a burgeoning population, and the trend in medicine toward specialization are facts of modern life. The law cannot remain static and inflexible under such circumstances.

*Johnson City v. Booth* foreshadows this developing trend. Johnson City owned 1900 acres in Unicoi County, largely undeveloped, and used the property as a watershed for gathering water into its filtration plant, also located on the Unicoi County property, and piping it therefrom fourteen miles to Johnson City. After reviewing the case law relative to the doctrine of incidental use, this Court held:

> The question remains: Are the city's holdings in the watershed within the protection of the exemption? The city insists and the proof shows that, in order to prevent erosion and afford a more uniform flow of water from the springs and creek throughout the year by preventing a rapid run-off during heavy rains, it is desirable to keep the watershed in timber and that for purposes of sanitation it should be kept as free of human habitation as possible. To do this it is desirable, if not necessary, to own a good part of the land comprising the watershed though pollution may be overcome or mitigated by filtration. Hence, it is argued, its entire properties in Unicoi County are being used exclusively for municipal purposes.

> We think there is merit in this argument. The exemption would be of little value if a municipality could be forced to choose either to keep its watershed too

-11-

small to ensure an adequate supply of pure water or lose its right to an exemption for all of its property not immediately and directly used in the operation of its system.

*Johnson City v. Booth*, 261 S.W.2d at 824.

The opinions of the Attorney General are not law, but are required by statute to be printed and published for public dissemination and for the guidance of state officials. Tenn. Code Ann. § 8-6-205. In addressing the very question in issue in this case, the Attorney General of Tennessee opined:

> Health care facilities purchased by one county, but located in another county are not subject to ad valorem taxation by the county in which the facilities are located if the facts reveal that the primary function of the health care network as a whole is to serve the citizens of the purchasing county and that the operation of the facilities is incidental to and consistent with this primary function.

> . . . .

> This Office has previously taken the position that when property owned by a county or municipality is used exclusively for a "public purpose" such property is exempt from tax under Tenn. Code Ann. § 67-5-203(a)(1), regardless of where it is located in the state. *See* Op. Tenn. Atty. Gen. No. 86-64 (Mar. 17, 1986). Tenn. Code Ann. § 67-5-203(a)(1) reads:

>> All property of the United States, the state of Tennessee, any county, or any incorporated town, city or taxing district in the state that is used exclusively for public, county or municipal purposes shall be exempt from taxation; provided, that real property purchased for investment purposes by the Tennessee consolidated retirement system shall be subject to property taxation.

> The contribution of money and property by a county to acquire, build, or support a "hospital" is a "public purpose," provided that the hospital does not exercise racial or religious discrimination, is not operated for private profit, and serves the citizens of the contributing county, "without regard to whether the hospital is located within or without the territorial limits of the contributing county." *See* Tenn. Code Ann. §§ 68-11-504 and 68-11-505. The term "hospital" includes any institution, place, building or agency which has been licensed by the board for licensing health care facilities as well as any clinic operated under the authority of a local regional health department. Tenn. Code Ann. § 68-11-302.

> . . . .

It is not difficult to envision circumstances in which a county's decision to provide health care services to some inhabitants of a neighboring county would also serve the welfare of its own citizens. If a county hospital takes large numbers of patients from surrounding counties, for example, it might have a legitimate interest in locating satellite facilities close to the residences of those out-of-county patients, so as to serve the entire hospital community better and to alleviate crowding in the facility located within its own borders. Alternatively, a health care facility situated in another county might be more conveniently located for the citizens of the purchasing county who live along the county line or who commute to work in the adjoining county.

Similarly, a purchasing county may have an interest in promoting good health among residents of neighboring counties who work or transact business in the purchasing county and expect to receive hospital care there. The boundaries of Tennessee counties are not impermeable for either the residents in the region who work or shop in a neighboring county, or for diseases that may spread throughout a region that is economically and socially integrated.

. . . .

If a county constructs health care facilities in another county as part of a wider health care system centered within its own boundaries, the operation of the satellite facilities can conceivably be "incidental to and consistent with" the primary purpose of providing health care to the citizens of the purchasing county. If so, then the health care facilities would meet the test set forth in *City of Chattanooga*[5] and would, therefore, be tax-exempt.

It is the opinion of this office, therefore, that health care facilities owned by one county but located in another may be exempt from tax, provided that a close factual examination reveals that their operation is consistent with and incidental to the primary purpose of serving the citizens of the owning county. If the facilities do not operate in a way that is consistent with and incidental to this primary purpose, then they would be subject to tax.

Op. Att'y Gen. 99-045 (Mar. 1, 1999).

The findings of fact of the trial court include:

2. Maury Regional is a referral hospital which depends upon referrals by hospitals situated in counties surrounding Maury county.

---

[5] 315 S.W.2d at 410.

3. The Board of Trustees of Maury Regional became concerned about the possibility that hospitals in the surrounding counties i.e. Marshall, Wayne, and Lewis, would be acquired by a Nashville-based hospital. Thus, if those acquisitions occurred, 75% of the patients previous (sic) referred to Maury Regional would be directed to the Nashville-based hospital.

4. In 1995-1996, Maury Regional implemented a strategy to stabilize and preserve its patient referral base by establishing Maury Regional and acquiring and operating Marshall Medical Center in Marshall County, Lewis Community Hospital in Hohenwald, Lewis County, Tennessee and entering into a lease to operate the Wayne County Hospital.

Compelling to the decision of the Chancellor, however, was his further finding:

Maury Regional identified several ways in which its ownership and operation of Marshall Medical serves a public purpose and improves the quality of health care for the residents of Maury County. For example, physician specialists were recruited, and certain specialists opened an office in Maury County. Additionally, there were cost savings and the delivery of health care services to residents of Marshall County who worked in Maury County. However, these allegations are conclusory, and not supported by sufficient evidence.

In this latter respect, we disagree with the Chancellor. Almost all the proof in the record before the Court is from witnesses called by Maury Regional Hospital. The motivations which impelled Maury Regional Hospital in the mid-1990's to acquire Marshall Medical Center and two other hospitals within the region are without dispute in the record. The reasons were the very same as reasons that impelled Baptist and Columbia HCA out of Nashville to acquire similar rural hospitals. Maury Regional could either compete in building a referral base for specialty care or be itself relegated to a primary care hospital, leaving residents within the region, from Columbia in the north to Waynesboro in the southwest, with the choice of going to Huntsville, Alabama or Nashville, Tennessee for specialty care.

The degree to which the specialty referral projections of the mid-1990's have been since realized was a hotly disputed issue in the proof, and the realities in many respects have not lived up to the projections. But, the overall purpose was accomplished. Maury Regional Hospital is the only substantial specialty care hospital facility between Huntsville and Nashville. The testimony of William Walter, Administrator of Maury Regional Hospital since 1974, is enlightening.

A.     Yes. I - - you know, I think Exhibit 23 is a critical exhibit in substantiating how beneficial the out-of-county services are. And the first one listed there is radiation therapy. Maury Regional Hospital has the largest radiation therapy department of any nonmetropolitan county in the state of Tennessee. Sixty-seven percent of all of our patients come from outside Maury County. We couldn't have - - we probably wouldn't have a radiation center at Maury Regional Hospital unless

-14-

we had the out-of-county patients to support it. That means that the people in Maury County and Marshall County would be driving every day. And if you - - and my wife is a cancer survivor. Those people drive every day to get that treatment. And now people from Marshall, people from Maury have to - - they don't have to go to Nashville. That's access and that's quality.

Another area is medical oncology. I would say that we are the only rural, nonmetropolitan hospital in the state of Tennessee that has an independent medical oncology unit in its hospital. And what does that mean? It means that we have enough patients that we could take one nursing unit and say, hey, this is our cancer unit. And the nurses in that unit day in and day out are treating cancer patients, so they're not on the OB floor. They're not on a surgery floor. They're on medical oncology. That's quality and that's access.

Orthopedic surgery is another one. We have eight orthopedic surgeons operating at Maury Regional Hospital. We have eight because 54 percent of their patient load comes from outside the county. So not only do we have a large number, but they're able, because of that volume, to subspecialize. So we have an orthopedist that specializes in hand surgery. We have one that specializes in knee, and we have one that specializes in back, one in total hips. We wouldn't have that for the citizens Maury County if we didn't have that large volume.

. . . .

A.	In my opinion, the establishment of that network was critical to the development of most all of our specialty services, that's so critical in cardiology, in pediatrics, and in radiation therapy and in radiation oncology, in orthopedics. If we didn't have a - - not a system, but a successful system in place, I truly believe today Maury Regional Hospital instead of being 67 percent specialty care would be about 40 percent specialty care. And I truly believe that hundreds of people living in Maury County and Marshall, thousands, would be driving to Nashville for specialty care that's now given at Maury Regional Hospital.

Q.	In your opinion, would the 37 specialty physicians that have been added to the staff be practicing at Maury Regional Hospital?

A.	Some - - I'm not saying none of them would be, but there wouldn't be 37.

Cross-examination of Mr. Walter and other evidence in the record indicates that projections as to the volume of referrals after acquisition of Marshall Medical Center, Wayne Medical Center, and Lewis Ambulatory Care Center were not accurate. But, although Baptist Hospital in Nashville and not Maury Regional Hospital acquired the local facility in Hickman County, the Maury Regional patient level from Hickman County has remained fairly stable since 1995; and, although Columbia/HCA of Nashville and not Maury Regional owned the facility in Lawrence County, Tennessee, the greatest percentage increase in admissions to Maury Regional Hospital since 1995 has been from Lawrence County. Yet, percentage increases in referrals from Marshall County have

increased only marginally. These established facts, however, are affected by geography. Referrals from Maury Regional's acquisitions are only part of the referral equation. Columbia is much closer to Lawrenceburg than is Nashville. Centerville is likewise much closer to Columbia than it is to Nashville. More important to the public purpose of Maury County question is the self-evident fact that 37 specialty care physicians in cardiology, pediatrics, oncology and radiation therapy provide residents of Maury County local specialty care treatment not otherwise available except by travel to Nashville.

It would hardly do justice to Marshall Medical Center and the other acquisitions of Maury Regional Hospital to refer to them as "incidental" to the operation of Maury Regional Hospital. Given, however, the flexibility of that term as it is used in reported case law, the exemption in this case should prevail. This Court held in *Johnson City v. Booth*, "The exemption would be of little value if a municipality could be forced to choose either to keep its watershed too small to ensure an adequate supply of pure water or lose its right to an exemption . . . ." *Booth*, 261 S.W.2d at 824.

Maury County derives no ad valorem tax from the Maury County holdings of Maury Regional Hospital. Should the county be forced to choose between local specialty hospital care, which enures to its benefit and the benefit of other counties in the region, and the alternative of seeking such care in Nashville? We think not. Maury Regional Hospital serves a public purpose for Maury County, and the ad valorem tax exemption as to Marshall Medical Center is not defeated by the incidental use rule.

Conclusion

The General Assembly of Tennessee created Maury Regional Hospital and declared its mission to be "providing health services to the region." The proof is undisputed that the region is composed of Giles, Lawrence, Wayne, Perry, Lewis, Hickman, Marshall and Maury counties. Maury Regional Hospital is a non profit corporation owned by Maury County, Tennessee, and it is likewise undisputed that all of its properties are held for public purpose within the region. Its regional properties are, thus, not subject to ad valorem taxation by any of the counties in the region. We further hold that, if the "incidental use" doctrine applies under the flexible definition thereof as established by case law, Marshall Medical Center serves a Maury County public purpose within the meaning of the doctrine.

The decision of the trial court is reversed, and the case is remanded for any further proceedings that may be necessary.

Costs of the cause are assessed to Appellees.

_____
WILLIAM B. CAIN, JUDGE